Statement of the case.

No. 2561.

## WHITAKER & GALLOWAY v. E. A. ALLDAY.

1. IMPROVEMENTS IN GOOD FAITH.—Appellants bought the land March 6, 1883, under an invalid order of sale, and at once took possession and made thereon valuable improvements. Appellee bought the land under a valid order of sale against the same defendant, and brought suit May 11, 1883, for the land. Appellants before the suit had completed their improvements. They sought to recover the value of these improvements. *Held:*

(1) As appellee could not have claimed, under the statute, compensation against the defendant in execution had he instituted suit within one year from their entry, neither could such claim be asserted against the plaintiff who held the title of such defendant in execution.

(2) Where both parties, plaintiff and defendant, claim the land in controversy from the same grantor, and the junior claimant holds the title, the senior claim being invalid, the junior and better title has all the rights of the common source, and the claimant under the imperfect title can not tack his possession to the common grantor so as to make out a claim for improvements as a good faith possessor for twelve months.

2. TENANTS IN COMMON—PAROL PARTITION.—Two tenants in common in a tract of land made a parol partition. After the partition, one leased a building lot for a term of years, receiving rents therefor. The right of the other was sold under execution, the purchaser having no notice of the partition. The holders of the term were in possession of the lot at the execution sale. In suit by such purchaser, *held:*

(1) That the partition was valid between the owners.

(2) That the lessees under one, after the partition, were protected under the partition; and

(3) A purchaser, while the lessees were in possession under the lease, was chargeable with notice of the partition to the extent necessary to protect the lessees, etc., that on recovery by the execution purchaser it was error to allow rents against the lessees so holding.

3. SAME—LICENSE.—A lessee occupying land held in common under license from one of the owners in tenancy in common is not liable to be charged with rent at suit of another tenant in common.

4. RENTS—TENANCY IN COMMON.—One of several tenants in common recovering land held by a trespasser, or by one without license from any of the owners, can recover rents pro rata against such occupant.

APPEAL from Cass. Tried below before the Hon. W. P. McLean.

Argument for the appellees.

The report of the former appeal in this case, together with the opinion following, gives the facts.

*O'Neal & Son*, for appellant: An oral partition between tenants in common is binding and held good in law.

The evidence shows that W. F. Cobb and A. Frunk had a parol partition of the land in controversy, Cobb taking the twenty-five acres east of the railroad, and Frunk the twenty-five acres west of the railroad, and that they both made improvements on their respective interests—Cobb on the east side of the railroad and Frunk on the west side of the railroad. (Smith v. Chenault, 48 Texas, 461; Hoffman v. Cartwright, 44 Texas, 301; Hunter v. Morse, 49 Texas, 225, 226; Stuart v. Baker, 17 Texas, 418; Freeman on Co-tenancy and Partition, 398.)

The court erred in not allowing defendants pay for their improvements and for improvements by A. Frunk, as it held in its finding that said improvements were made in good faith. (Rev. Stats., art. 4814; Bitner v. New York and Texas Land Co., 67 Texas, 341.)

*George T. Vaughan, H. A. O'Neal, J. M. Adams* and *J. L. Sheppard*, for appellees: 1. An occupant to successfully claim for improvements must show not only that he occupied and claimed the land in good faith, but also under color of title, i. e., under some instrument or paper writing presenting the appearance or semblance of title; and a deed which is void for uncertainty of description, and does not on its face purport to convey any title to a particular tract of land, can not constitute a colorable title.

(a.) That a colorable title is necessary. (Elam v. Parkhill, 60 Texas, 581; Robson v. Osborn, 13 Texas, 298; Miller v. Bronson, 50 Texas, 583; Stewart v. Kemp, 54 Texas, 251; Hatchett v. Conner, 30 Texas, 107; House v. Stone, 64 Texas, 686; Sedgwick & Wait Trial of Title to Land, par. 679, and authorities cited; Hersby v. Thompson, 8 S. W. Rep., No. 8., p. 691 and authorities cited.

(b.) That a deed which is void for want of description of land attempted to be conveyed can not constitute a colorable title. (Sedgwick & Wait Trial of Title to Land, 780, 781 and authorities; Hersby v. Thompson, supra; Sartain v. Hamilton, 12 Texas, 219; Nesbitt v. Walters, 38 Texas, 576.)

2. Unless appellants can show that they and those under

whom they claim had adverse possession in good faith of the premises in controversy for at least one year next before the commencement of this suit, they can not recover pay for their improvements. And in order to make out one year's adverse possession they can not tack their possession to Frunk's possession, as all parties to this suit claim under A. Frunk as a common source of title. (Rev. Stats., arts. 4813, 3198; Estell v. Cole, 62 Texas, 695; Henderson v. Ownby, 56 Texas, 647; Harle v. Langdon's heirs, 60 Texas, 555; Sedgwick & Wait Trial of Title to Land, par. 705; Nichols v. Dibbrell, 61 Texas, 539; Osborne v. Osborne, 62 Texas, 495; Duke v. Reed, 64 Texas, 705; Freeman on Co-tenancy and Partition, 5283; 65 Texas, 111.)

GAINES, ASSOCIATE JUSTICE. This case was before this court at a former term and is reported in 66 Texas Reports, 669. It was then held that the sheriff's deed under which Whitaker and Galloway claimed title to the land in controversy, by reason of uncertainty in the description of the premises attempted to be conveyed, passed no title. We need not recapitulate the facts stated in the former opinion. Upon the second trial Whitaker and Galloway yielded the question of title, and merely offered their deed as a basis for their claim for compensation for improvements placed upon the land. Allday recovered a judgment for the land and a judgment against Whitaker & Galloway for eight hundred and ninety-two dollars as rents.

The questions presented upon this appeal involve merely the adjustment of the equities between the parties, and we think it would subserve no useful purpose to consider the numerous assignments and cross assignments of error in detail.

It is claimed by appellants Whitaker & Galloway that the court should have allowed them compensation for their improvements. The sale under which they attempted to purchase was made March 6, 1883, by the sheriff, under an order of sale in the nature of an execution against one Frunk, from whom both parties claim as the common source of title. They immediately took possession and began their improvements. Allday purchased under a similar order of sale against the same defendant, on April 3, 1883, and brought this suit on the eleventh day of the next month. The improvements were completed by appellants before the suit was brought. The

statutes require that a defendant, in order to sustain his claim for improvements, must aver and prove that "he and those under whom he claims have had adverse possession in good faith of the premises in controversy for at least one year before the commencement" of the suit. (Rev. Stats., art. 4813.)

Let us suppose that there had been no second sale, and that Frunk, the defendant in execution had, within twelve months from the time Whitaker and Galloway took possession, brought suit to recover the property, could they have maintained a claim for improvements under the statute against Frunk? Could it be said that they, and those under whom they claimed, had had adverse possession for at least one year? The possession for the period provided by law must be adverse to the plaintiff in the suit, and it is clear that they could not tack Frunk's possession to their own in order to complete the required term. It would be absurd to say that Frunk's possession was adverse to himself. Now Allday, by his purchase at the sheriff's sale, acquired all the right in the land that Frunk had, and hence if the claim for improvements in good faith could not have been maintained against Frunk, it can not be maintained against Allday. We think the court did not err in refusing to award appellants compensation for their improvements.

We think also that there was no error in giving Allday judgment for one-half of the value of the use and occupation of certain houses, etc., on the property in controversy, on the west side of the railroad; but the judgment for one-half of the rents of a certain lot on the east side, covered by a planing mill, presents a different question. Frunk and Cobb, who was a party defendant in the suit, were owners as tenants in common of the fifty acres of land in controversy, each having a half interest. The proof shows, and the court finds, that they made a parol partition by which that part lying east of the railroad was set apart to Cobb and that on the west side to Frunk. The court found that Allday had no notice of this partition, and this finding, as to the property in general, was correct. He swore he had no actual notice, and the fact that Frunk was occupying certain lots on the west and Cobb on the east, was not constructive notice without other proof. Such occupancy was consistent with the idea of a tenancy in common, as the title appeared of record. But Galloway testified that in 1882, after the parol partition had been made,

Whitaker and Galloway leased the lot upon which the planer was placed of Cobb at one hundred dollars per annum, and paid him the rent. The parol partition was good as between Frunk and Cobb, and purchasers from either with notice. When Allday purchased Whitaker & Galloway were in actual possession of this lot under a valid lease. This possession was constructive notice to Allday of their title and of the parol partition, so far as it affected the title to this lot, and by his purchase he acquired no claim to it as against the lessees. We think there was error in awarding rents on the lot under consideration.

The appellee in his brief expresses his willingness to abide by the judgment; but files cross assignments of errors and asks their consideration in the event the judgment shall be disturbed. This makes it necessary that we pass upon some questions presented by the appellee's assignments. The evidence shows that Whitaker & Galloway occupied and used on the west side of the railroad on the property in controversy, sixteen cabins, or small tenant houses; some residence houses, among them one known as the Floyd house, and some other property not necessary to mention. Rents were allowed on all this property, except four cabins and the Floyd house. It is not apparent to us, from the court's findings, why these houses last mentioned were excepted.

The testimony in reference to the houses constructed by Whitaker & Galloway is not very clear, as it appears in the record; but as we construe Galloway's own testimony, which is not disputed, it shows that four of the tenant houses were constructed by Whitaker & Galloway with Cobb's permission. It seems the land upon which they were situated was supposed at the time to belong to Cobb individually, there being some misunderstanding about the lines of the fifty acre tract now in controversy.

Now, plaintiff's case was that he and Cobb were tenants in common on the premises in controversy, and upon this theory he prevailed on the court below. It appears, then, that these four cabins were placed upon the property with the express permission of one of the tenants in common, whether under mistake or not does not matter. Can the other tenant in common recover rent on the improvements so placed there? We think it would be inequitable to allow this. He would be entitled to his rent on the land occupied by the cabins if it had

any rental value, but from the evidence we presume it had none. We think, however, the plaintiff was entitled to recover half the value of the use and occupation of the Floyd house. This was built, it is true, by appellants, but the testimony does not show that, as in case of the four cabins, it was constructed under a license from Cobb. The rental value of this appears by the testimony of Galloway himself to have been eight dollars per month. The court allowed rents on the other property for thirty months. Upon this basis plaintiff should have been allowed for the use and occupation of this house one hundred and twenty dollars. The amount improperly allowed on the lot upon the east side of the railroad was one hundred and twenty-five dollars. In all other respects we think the proper judgment has been rendered. The plaintiff remitted in the court below thirty-seven dollars of rents on the Henkle house and twenty-eight dollars on the Taylor house.

The judgment as to rents will accordingly be reformed so as to deduct, in addition to the sums remitted, the sum of five dollars from the amount recovered below. In other respects the judgment will be affirmed at the cost of appellee.

*Affirmed and reformed.*

Opinion delivered October 30, 1888.