## MONDRAGON v. MONDRAGON et al.[*]
### (No. 6703.)

(Court of Civil Appeals of Texas. San Antonio. March 15, 1922. Rehearing Denied April 5, 1922.)

1. **Frauds, statute of** ☞103(1)—**Receipt for price sufficient memorandum of sale of land.**

A memorandum for sale of land, satisfying the statute of frauds, may be in the form of a receipt for the price.

2. **Frauds, statute of** ☞118(2)—**Description of land in memorandum of sale aided by instrument therein referred to.**

The description in a memorandum of sale of land, a certain lot devised to vendor by his mother, may, to satisfy the statute of frauds, be aided by the description in the will.

3. **Acknowledgment** ☞5—**Deeds** ☞47—**Acknowledgment and witnesses not essential as between parties.**

Acknowledgment of a deed and subscribing witnesses, provided for by Rev. St. art. 1109, are essential for registration and notice only, and not for validity of deed as between the parties.

4. **Witnesses** ☞98—**Execution of deed provable by grantee's testimony.**

Since abrogation of rule inhibiting parties from testifying in their own behalf, execution of deed by grantor may be proved by grantee's testimony.

5. **Deeds** ☞45, 51—**May be signed by third person at grantor's request; deed may be ratified by grantor.**

A grantor is bound by a deed not manually executed by him if his name is signed to it by a third person at his request, or if his name is signed thereto by a third person without his request, and he subsequently adopts it as his own.

6. **Frauds, statute of** ☞115(4)—**Instrument wholly in purchaser's handwriting ineffectual.**

An instrument is ineffectual as a deed or a contract for sale of land, in view of the statute of frauds (Rev. St. arts. 1103, 3965) where all of it, including the vendor's signature, is written by the purchaser, and not acknowledged by the vendor or otherwise adopted by the vendor, though he had authorized the purchaser so to sign his name.

7. **Specific performance** ☞121(2)—**Necessary proof of parol contract to convey land stated.**

For specific performance of a parol contract to convey land, proof of the contract must be distinct, clear, and specific.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[*]Writ of error granted May 24, 1922.

**8. Specific performance ⬚⟶39—Granted of parol contract to convey land only to prevent fraud.**

A parol contract to convey land cannot be enforced on any other ground than that of preventing fraud.

**9. Specific performance ⬚⟶42—Necessary acts of performance of parol contract such as could have been done with no other design.**

When specific performance of a parol contract to convey land is sought by one claiming performance, the acts done in performance must be such as could have been done with no other view or design than to fulfill such contract.

**10. Specific performance ⬚⟶41—Payment, possession, and improvements necessary in case of parol sale of land.**

That there may be specific performance of parol sale of land, there must be payment of all or a substantial part of the purchase money, taking possession by the purchaser of the property, and the placing thereon by him of substantial improvements of a permanent nature.

**11. Specific performance ⬚⟶42—Possession by tenant in common held not referable to parol purchase of land from cotenant.**

Possession by a tenant in common cannot be referred to his claimed parol purchase from a cotenant, so as to constitute part performance, as regards right to specific performance; there having been no open act of disseizin or joint act of partition, and, his subsequent retention from the cotenant of his share of the revenues being consistent with its being done, as claimed by the cotenant, under an agreement for payment in this way of a loan.

**12. Specific performance ⬚⟶47—Improvements with revenues from the land not part performance of parol contract of sale.**

The making of improvement by the tenant in common in possession with revenues from the land does not constitute a part performance of a parol contract of sale to him by a cotenant, as regards right to specific performance.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Martine Mondragon against Juan Mondragon and others. From an adverse judgment, plaintiff appeals. Reversed as to plaintiff.

E. P. Scott and J. M. Taylor, both of Corpus Christi, for appellant.

Russell Savage, of Corpus Christi, for appellees.

SMITH, J. Upon her death in 1908 Pascuala Mondragon left a will in which she bequeathed lot 6 in block 59, in the city of Corpus Christi, in equal shares to her four sons, Juan, Tomas, Martiniano (also known as Martine) and Anacleto Mondragon. In July, 1921, Martiniano Mondragon brought this suit against his three brothers, alleging that the property was not susceptible of partition, and praying that it be sold and the proceeds distributed among the parties, and for an accounting of the rents. Juan Mondragon answered, alleging that he had purchased the interest of Martiniano in the lot, and prayed for judgment establishing his title. From an adverse judgment Martiniano brings this appeal.

The claim of Juan Mondragon to the property involved is primarily based upon the following receipt:

"Received from Juan Mondragon the sum of hundred sixty dollars $160.00 dollars in payment of my part that I have in the lot No. 6, block 59, inheritance which my mother Pascuala Mondragon left us, I not having any further right in said inheritance. I sign the sale to-day 24th day of February of 1916, in Corpus Christi, Texas, Nueces County.

"I, Martiniano Mondragon.

"Witnesses: Anacleto Mondragon, Jr. Porfirio Mondragon. Josefa Mondragon."

The entire instrument, including the signatures of the purported grantor and the three witnesses, was in the handwriting of, and was written by, Juan Mondragon, the grantee, although it is conceded that the grantor and witnesses were able to sign their own names to the instrument, but did not do so. It is also conceded that Martiniano, the grantor, did not acknowledge the execution of the instrument before any officer authorized by law to take acknowledgments, and that it had never been recorded or filed, or presented for that purpose, but had remained in the custody of Juan Mondragon up to the time it was produced upon the trial of the cause. In verified pleadings Martiniano Mondragon denied that he had ever sold the lot to Juan, or executed, or authorized any one else to execute for him, the instrument mentioned, which he alleged, under oath, was a forgery. Upon the trial he testified that he had never sold the property to Juan, and that he had not only not executed, nor authorized any one else to execute, the instrument, but had never seen nor heard of it until it was produced upon the trial by Juan. The latter, as well as the three witnesses, testified that Martiniano had authorized Juan to sign his name to the instrument, and that the three witnesses had authorized him to also subscribe their names as witnesses. The trial court found in accordance with this testimony.

Appellant challenges the validity of the instrument in question upon the ground that it contravened the statute of frauds: (a) That it was not signed by the purported grantor; (b) was not witnessed by any subscribing witness; (c) was not acknowledged by the grantor before any officer authorized to take acknowledgments; and (d) the land sought

to be affected thereby was not sufficiently described.

In testing the sufficiency of the instrument in question, the following articles of the statutes must be considered:

"Art. 1103. *Conveyances Must be in Writing, Signed and Delivered.*—No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing."

"Art. 1108. *Other Forms and Clauses Valid.*—No person shall be obliged to insert the covenant of warranty, or be restrained from inserting any clause or clauses in conveyances hereafter to be made, that may be deemed proper and advisable by the purchaser and seller; and other forms not contravening the laws of the land shall not be invalidated.

"Art. 1109. *Must be Witnessed or Acknowledged.*—Every deed or conveyance of real estate must be signed or acknowledged by the grantor in the presence of at least two credible subscribing witnesses thereto; or must be duly acknowledged before some officer authorized to take acknowledgments, and properly certified to by him for registration."

"Art. 1116. *Failing as a Conveyance, Shall be Valid as a Contract.*—When an instrument in writing, which was intended as a conveyance of real estate, or some interest therein, shall fail, either in whole or in part, to take effect as a conveyance by virtue of the provisions of this chapter, the same shall nevertheless be valid and effectual as a contract upon which a conveyance may be enforced, as far as the rules of law will permit."

"Art. 3965. *Written Memorandum Required to Maintain Certain Actions.*—No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized. * * *

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year. * * *"

[1, 2] In the matter of form the writing here involved was sufficient to constitute such "instrument in writing" as contemplated in the statutes. Fulton v. Robinson, 55 Tex. 401; Morrison v. Dailey (Tex. Sup.) 6 S. W. 426. An instrument almost identical with this was held, in the Fulton v. Robinson Case, to be sufficient, the writing in that case being in the form of a receipt, as here:

"Received of James Henderson three hundred dollars, in part payment of a certain tract of land, being my own headright, lying on Rush creek, in the cross timbers, this 23d March, 1859."

The receipt in the instant case shows the names of the parties and the amount and payment of the consideration, and, while the description of the land is within itself wholly insufficient, yet, by reference to the will of Pascuala Mondragon, therein referred to, the full description of the lot is readily ascertainable. It was by similar means that the properties involved in the Fulton-Robinson and Morrison-Dailey Cases were located, and the imperfect descriptions in the conveyances were thus upheld. These conclusions dispose of all of appellant's complaints except those directed at the manner of execution of the instrument involved.

It will be observed that, in the execution of the receipt here involved, not a single requirement of the statute has been literally complied with. It was neither written nor executed by the purported grantor. It was neither written nor personally subscribed by either of the three purported subscribing witnesses. Although both grantor and witnesses could have written the instrument and signed their names thereto, neither of them made his mark thereon, nor put his hand to it for any purpose whatsoever, nor was execution acknowledged by either of them before any officer authorized by law to take acknowledgments. It was never recorded, or filed or presented for that purpose, but remained in the possession of the purported grantor, and was never brought to the light of day until produced by grantee upon the trial of this cause, more than five years after its purported execution, when it was disclosed and conceded that the entire instrument, including the signatures of grantor and subscribing witnesses, was in the handwriting of, and was written exclusively by, its sole beneficiary, the grantee. The question is whether or not this transaction can in any state of facts be so purged of the grave suspicion which obviously permeates it as to give the resulting writing the form and dignity with which a solemn conveyance of real property should be invested, so as to evade the effect of the statute of frauds. It should be said at the outset that the trial court's finding of fact, that the grantor and subscribing witnesses were present and authorized the grantee to sign their names to the receipt, while in direct conflict with the testimony of the grantor and his wife, is supported by the testimony of the subscribing witnesses, as well as other circumstances developed upon the trial, and it may be further said that the finding is supported by the preponderance of the evidence. So that the question is resolved into one of law.

[3-6] The statutory formalities required in the execution of deeds conveying real estate have been so relaxed by liberal construction and application that it may be well said they are no longer given anything like literal effect. The acknowledgment of a deed, or the signature of subscribing witnesses, is held to be essential for the purposes only of registration and notice; for, without acknowledgment or subscribing witnesses, a deed

is nevertheless, binding as between the parties thereto when executed by the grantor, in which case the execution may be proven as at common law. Clapp v. Engledow, 82 Tex. 290, 18 S. W. 146; McLane v. Canales (Tex. Civ. App.) 25 S. W. 29; Robb v. Robb (Tex. Civ. App.) 41 S. W. 92. And, since the abrogation of the rule inhibiting parties from testifying in their own behalf, execution by the grantor may be proven by the testimony of the grantee. Robb v. Robb, supra. So, also, it is held that a grantor is bound by a deed not manually executed by him if it appears that his name is signed to it by a third party at his request, or even when a third party has signed his name thereto without his request if he should subsequently adopt it as his own. Newton v. Emerson, 66 Tex. 145, 18 S. W. 348; McAllen v. Raphael (Tex. Civ. App.) 96 S. W. 761. These holdings silence the complaints of appellant that the instrument in question was not personally subscribed by the grantor or by the named witnesses, or acknowledged by the grantor. But we feel obliged to sustain appellant's contention that the instrument is without effect for the reason that the whole of it, including the signature of the grantor, was written by the grantee, and was not acknowledged by the grantor, or otherwise adopted by him as his own act. We have not been cited to, nor have we found, any decision upholding a conveyance of title to real estate to which the grantor's name was signed by the grantee, as presented by the record here. And, while it is true, as we have suggested, that the requirement in the statute of frauds that such conveyance must be in writing has been weakened by the admission of exceptions and distinctions as to its application, and by forcing upon it constructions tending to restrict its beneficial operation, we do not believe that any court has carried this tendency so far as to let in the exception sought by appellee to be enforced here, and we will not so extend it. We think that to do so would violate both the letter and spirit of the statute, and defeat its very purpose by opening up a broad avenue of fraud which has so far been closed.

As is said in 1 Mechem on Agency, § 180:

"While there does not appear to be any reason why, in the ordinary case of a written contract or memorandum, one party may not, in the presence and by the direction of the other at least, sign the latter's name to the contract or memorandum made between them, it is held that, in the case of the note or memorandum required by the statutes of frauds, the other party cannot be the agent referred to in the statute. The theory is that it would defeat the whole purpose of the statute if the other party, who could not under the statute directly establish the contract by oral testimony, may do so indirectly by establishing by such testimony that he has made the agent of the other to sign the note or memorandum"—citing Wright v. Dannah, 2 Camp. 202; Bird v. Boulter, 4 B. & Ad. 443; Sharman v. Brandt, L. R. 62 B. 720; Clough v. Clough, 73 Me. 487, 40 Am. Rep. 386.

We hold, then, that the receipt in question here was ineffectual either as a deed or as a contract for the sale of the property involved.

It is next contended that, without regard to the receipt or so-called conveyance, the transaction set up constituted a sale of the property in parol. It seems that, two or three years prior to the alleged sale, Juan Mondragon, being the oldest of the four brothers, who were cotenants, by common consent took charge of and managed the property, consisting of the lot in controversy and the rent house thereon. He collected the rents, paid the taxes, and distributed the net revenues among the four of them. At about the time the alleged sale was made to him by Martiniano, it is undisputed that he paid $150 or $160 to the latter, who claimed that he borrowed the amount, with the understanding that Juan was to retain his part of the revenues from the place until this sum was repaid, while Juan contends that this was the consideration he paid as the purchase price of Martiniano's interest in the place. Juan continued to manage the property as before, but ceased to pay over to Martiniano the latter's share of the rents. He permitted third persons to build two more houses on the lot, for which he collected $1 each per month ground rent. He also built another rent house on the lot and rented it out. Martiniano knew these things were being done by Juan, and made no protest, and called for no explanation. Now Juan sets up all these facts, contending that they constitute delivery by Martiniano to him of possession of the premises, and that this delivery of possession, coupled with the payment of the consideration, and the improvements placed on the premises by him, constitutes a parol sale, which he now seeks to enforce. It may be said that all these facts are undisputed, except the purpose of the payment of the money to Martiniano by Juan, one contending that it was a loan, the other that it was the price paid for the purchase of the property.

[7-10] To entitle one to specific performance of a parol contract to convey land, the proof of such contract must be distinct, clear, and specific. Such contracts can never be enforced upon any other ground than that of preventing fraud, and, when they are sought to be enforced by one claiming performance, the acts done in performance must be such as could have been done with no other view or design than to fulfill the particular contract thus sought to be enforced. Lodge v. Leverton, 42 Tex. 18; Morris v. Gaines, 82 Tex. 255, 17 S. W. 538. Payment of a substantial part, or all, of the purchase price must be accompanied by the grantee taking possession of the property, and plac-

ing substantial improvements of a permanent nature thereon. The three elements must concur in order to constitute a parol sale of land. Lodge v. Leverton, supra; Bradley v. Owsley, 74 Tex. 71, 11 S. W. 1052; Wells v. Davis, 77 Tex. 636, 14 S. W. 237; Cobb v. Johnson, 101 Tex. 440, 108 S. W. 811; West v. Webster, 39 Tex. Civ. App. 272, 87 S. W. 196; Terry v. Craft (Tex. Civ. App.) 87 S. W. 844.

While the purpose of the payment claimed by the grantee to have been made to the grantor was sharply disputed, we will assume in this discussion that it was in fact paid as the consideration for the purchase of the land. But the payment of the purchase money is not within itself such performance as will take the case out of the statute of frauds. Wooldridge v. Hancock 70 Tex. 18, 6 S. W. 818; Munk v. Weidener, 9 Tex. Civ. App. 491, 29 S. W. 409, and authorities cited. And, when such payment has been made, in whole or in part, the denial of enforcement does not operate as a fraud upon the person making the payment and seeking specific performance by reason thereof, since he has his action to recover the amount paid, and in this way be restored to his original position. Garner v. Stubblefield, 5 Tex. 552; Moore v. Powell, 6 Tex. Civ. App. 43, 25 S. W. 472.

[11] We come, then, to the question of possession. The grantee and grantor and their two brothers were cotenants of the land, each owning an equal undivided interest by devise from their mother. Each was entitled to possession, and the possession of one was the possession of the other, and therefore mere possession by appellee in this instance cannot avail him as being part performance of the alleged parol contract.

"An entry and possession of a plaintiff claiming to be the vendee would not * * * tend to show a contract of sale from the others; or any interest in him to the exclusion of others. For such possession to operate as a part performance, there must have been some prior act of open disseizin, or some joint act of partition among all the co-owners." Munk v. Weidner, 9 Tex. Civ. App. 491, 29 S. W. 409.

There was here no joint act of partition. There was no open act of disseizin; the conduct of Juan Mondragon, the alleged grantee, in constructing an additional rent house on the premises was not an open act of disseizin. The only change in the conduct of the parties was manifested by Juan in withholding from Martiniano, instead of paying to him, his portion of the net revenues from rents; and this course was just as consistent with the latter's contention that the money paid him by Juan was a loan to be repaid out of Martiniano's portion of the rents as collected as it was with Juan's contention that the transaction was a sale. The facts disclosed in the record do not show such adverse possession in Juan, the grantee, as to constitute part performance of the alleged contract of sale. They do not, in our opinion, meet the requirement that the possessory acts must be such as could be done with no other view or design than to perform the agreement of sale and purchase. They do not make that clear, distinct, specific case which is essential to warrant a decree for performance of a parol contract of sale of land, and thus avoid the force of the statute of frauds.

[12] We think, too, that appellee has failed to establish the improvements he placed on the premises to be such as to show substantial performance of the alleged contract, or that they are of such nature that to deny to him the specific performance of the contract will result in a fraud upon him. The court found that these improvements were of the value of $600, but it may be said to appear from the record that the rents collected and appropriated by Juan from the improvements existing on the land at the time of the alleged sale have amounted to more than the value of the improvements appellee has constructed. It is well settled that where, in cases of this character, the improvements are constructed with revenues derived from the rent or use of the premises, the making of such improvements does not constitute part performance of a parol contract of sale. Lodge v. Leverton, supra; Eason v. Eason, 61 Tex. 225; Wells v. Davis, supra.

The judgment must be reversed, and the cause remanded.

Reversed and remanded.

## On Motion for Rehearing.

In the court below appellee Juan Mondragon, in addition to his recovery against appellant, Martine Mondragon, also obtained judgment against Tomas Mondragon for an interest in the property involved. Tomas Mondragon acquiesced in that judgment, and has not appealed therefrom. In our original opinion the whole judgment was ordered reversed. This was inadvertent error, as the judgment should have been reversed only in so far as Martine Mondragon was concerned, and otherwise affirmed. The judgment of this court will be corrected accordingly.

Appellees' motion for rehearing will be overruled.