**PENA et al. v. FROST NAT. BANK et al.**

No. 10336.

Court of Civil Appeals of Texas.
San Antonio.

Aug. 17, 1938.

Rehearing Denied Sept. 7, 1938.

E. T. Yates and H. L. Yates, both of Brownsville, M. S. Church, of Dallas, and B. N. Goodrich, of Mexico City, Mex., for appellants.

S. S. Searcy, of San Antonio, H. P. Guerra, Jr., of Rio Grande City, Strickland, Ewers & Wilkins, of Mission, and T. L. Foster and J. W. Timmins, both of Dallas, for appellees.

SMITH, Chief Justice.

Appeal from Starr County.

This is an action in trespass to try title in which the plaintiffs below were denied recovery, upon a directed verdict, and have appealed. Appellants and appellees will be designated as plaintiffs and defendants, respectively, as in the court below.

There are two distinct sets of plaintiffs in the case, with separate and distinct

lawsuits, which, although coming up in one appeal, are presented here under different assignments of error, in separate briefs.

One set of plaintiffs, as heirs of Dionicia Trevino, sued for an undivided one-sixth interest in Porcion 96, in Starr County, while the other set, as the heirs of Yndalecio Trevino, sued for an undivided one-twelfth interest in the same land. The two claims do not conflict.

Defendants claim that the first set of plaintiffs was cut off in 1845 by a deed from the ancestor, Dionicia, which plaintiffs claim was void for lack of description of the land intended to be conveyed; and defendants claim that the second set of plaintiffs was cut off in 1879 by a partition deed of the ancestor, Yndalecio, which plaintiffs claim was void because forged. These contentions present the two controlling questions in the case.

Ygnacio Trevino died, in 1842, possessed of Porciones 96, 97, 98, 99, and 100, in the Ancient Jurisdiction of Camargo, State of Tamalipas, in the Republic of Mexico, but now a part of Starr County, Texas. Ygnacio Trevino was survived by several children, who succeeded to said lands, by inheritance from their father. Subsequently, in 1852,[1] the Legislature of the State of Texas confirmed the title to said lands, in said heirs and their assigns, to whom Porcion 96 was formally patented by the State, in 1880. All the parties to this suit seek to deraign title through said confirmatory Act, and the patent.

Dionicia Trevino, a daughter, was one of the children of Ygnacio, as was Encarnacion, another daughter, who married Don Luis Garcia Longoria, and, dying, was survived by four children, Eligio, Francisco, Juliana, and Hilaria. To those four children of her deceased sister, Dionicia Trevino, through Jesus Garcia, made the following conveyance, in the form of a receipt, to-wit:

"Received of my brother, Don Luis Garcia Longoria, the sum of sixteen pesos and forty-three cents ($16.43) for my right in and to lands inherited from my deceased father, Don Ygnacio Trevino in el Salado, according to the sixth provision of the final distribution of his estate, which payment has been made to me by my brother aforementioned in representation of my nephews, children of my deceased sister, 'Dona Encarnacion Trevino, and for his protection I execute these pres-

1 Acts 4th Leg. c. 71, p. 67.

ents at Camargo on the 15th day of December, 1845.

"At the request of my comadre Dona Dionicia Trevino.

"(Signed)    Jesus Garcia,
"(Rubrico)."

Said conveyance was duly deposited in the archives at Camargo, and recorded there in the book of protocols.

On March 30, 1857, in confirmation, or ratification, of said conveyance, Dionicia Trevino appeared, "for lack of a notary," before the Second Alcalde of Camargo, and "instrumental witnesses," and "witnesses of assistance," and, as stated in defendants' brief, "made known that on the 15th day of December, 1845 (the date of the receipt), she had sold and conveyed to her nephews, Don Eligio, Dona Juliana, Don Francisco and Dona Hilaria, her right to lands which she held through inheritance from her deceased father, Don Ygnacio Trevino, in the portion of lands del Salado which were situated on the left side of the Rio Bravo, as appears in Item 6 of her distributive share in said estate. She stated that she had made this sale for the sum of sixteen pesos and forty-three cents which she received from her deceased brother, 'Don Luis Longoria, to whom she executed on the date aforesaid (that is, December 15, 1845) an extrajudicial receipt, which was presented by the interested parties and acknowledged by Dionicia Trevino and would be attached to the notarial act; that in order to ratify the sale her nephews had requested her to give them this instrument and, therefore, she did ratify in every way the sale to which she referred, of her right to land which she inherited from her deceased father in the portion of land del Salado. The notarial act contains language following the usual deeds of that time in the nature of warranty of title and an acknowledgment that the land sold was not worth more than the purchase price."

Thereafter, on July 2, 1860, Eligio Garcia, one of the grantees in said conveyance, acting for himself and his co-grantees, procured a certified copy of said conveyance and notarial act, and Dionicia, the grantor, thereupon signed said copy, by mark, and three days later appeared before Peter Dowd, the County Clerk of Starr County, Texas, and acknowledged that she had signed, sealed and delivered the instrument for the purposes and consideration therein stated. This certified

copy, bearing the original signature and the original acknowledgment of Dionicia Trevino, was then filed for record in Starr County and there recorded sometime during that or the succeeding year.

Dionicia Trevino and her co-heirs, as well as her nephews to whom she purported to convey her interest in said lands, all resided in the municipality of Camargo, just across the Rio Grande from Starr County, Texas, where the land involved is situate. She visited among her kin, and, presumably, knew somewhat of their doings. She lived until the year 1893. She had conveyed her interest in said land to her said nephews, in 1845, affirmed the conveyance in 1857, and reaffirmed it, by executing and acknowledging the certified copy of the original conveyance and ratification thereof, in the year 1860, and seems never to have laid claim to it after the original conveyance. Subsequently, in 1879, her co-heirs, and her said nephews, the latter purporting to own her prior interest by reason of her conveyance thereof to them, partitioned the lands embraced in Porciones 96 to 100 among themselves, to the exclusion of Dionicia, who, by her silence, apparently acquiesced in the partition and her continued exclusion from ownership in and dominion thereover.

■ Plaintiffs first claim an undivided one-sixth interest in said Porcion 96 as the heirs (or their assigns) of the said Dionicia Trevino. It seems to be conceded by defendants, and in any event we shall assume for the purpose of this decision, that the title to that interest is in the plaintiffs unless it was effectually conveyed away by their said ancestor through the deed and ratifications thereof set out above. For there is evidence to show, and we must assume its truth in the face of the directed verdict, that Dionicia was married in 1834 to one Jose Antonio Bazan, a Frenchman, whose violent demise and apparently hurried and perfunctory burial are chronicled in a certificate of the priest in charge and keeper of the archives of the Church of the Immaculate Conception at Mier, Mexico, reciting that

"On the 27th day of October, 1846, in the Cemetery of this Church of the Village of Mier, I, the Reverend Jose Luis G. Garcia, Priest in charge of same, buried, under the simplest funeral service, the body of Jose Antonio Bazan, an adult, foreigner, who made no will nor received any sacraments because his death occur-red at the hands of savage Indians in the country of this jurisdiction. He had declared and said that he was married in Camargo to Maria (Dionicia) Trevino of said Camargo, whom he left a widow."

It further appears that a daughter, Hilaria, was born to that union, and was in turn survived by issue, through whom plaintiffs claim in this suit. In short, if Dionicia conveyed away her interest in Porcion 96, by said conveyance and ratification, then plaintiffs' claim thereto through Dionicia's daughter fails, and they are not entitled to recover; whereas, on the other hand, if those instruments were ineffectual as valid conveyances, then plaintiffs showed title, and should recover.

■ Under familiar rules plaintiffs must recover, if at all, upon the strength of their own title, without regard to any claimed weakness in defendants' title. We make this observation in view of plaintiffs' reiterated argument, that defendants did not show title in themselves.

■ Plaintiffs further contend, in their argument, that some of the several translations of documents in the record, from Spanish into English, are inaccurate. So far as the briefs show, plaintiffs made no objection in the trial court to those translations, or at least have assigned no error thereon in this Court, and those translations must therefore be considered as correct for the purposes of this opinion.

■ Without undertaking to set out the voluminous, albeit interesting, testimony upon the various elements of the ultimate question, we express the general conclusions, that the ancient instruments set out above—that is, the original conveyance, the notarial act of ratification, and the executed and acknowledged certified copy thereof—were admissible in evidence, and that, as a matter of law, they effectively conveyed away all the interest of Dionicia Trevino in Porcion 96, the land involved in this suit, if said land can be identified from the descriptions in those instruments, which qualification presents the controlling question in this first branch of the case.

It is contended by plaintiffs that the conveyance relied upon by defendants as divesting title out of Dionicia Trevino is void because it does not on its face describe any land, or point to any place where a description may be found, thereby presenting a patent ambiguity, which,

if present, concededly renders the conveyance void, as a matter of law; or that, if that congenital infirmity was avoided by the reference to the sixth provision in the final distribution of the ancestor's estate, the description nevertheless failed because the instrument so referred to was not put in evidence, nor was any other testimony supplying the deficiency; or that, in any event, there is no evidence in the record from which the land intended to be conveyed could be identified; but that, lastly, if there was any evidence of that character, it was not conclusive, but served only to raise an issue of fact, which plaintiffs were entitled to have submitted to the jury.

We think it is clear that the description in the original and confirmatory conveyances are effectually saved from the vice of a patent ambiguity by the references to provisions in the "distribution" of the ancestor's estate, which provisions, presumably, legally describe the share of the daughter, Dionicia, which she undertook to convey. The fact that that instrument was not produced and put in evidence does not relate back to the conveyances here under consideration and render them void under the theory of patent ambiguity. Those instruments, then, were not void on their face, for want of description of the property sought to be conveyed. For those instruments, while not sufficiently describing the property by their own terms, pointed out the grantor's source of title as the place where, presumably, an adequate description could be found. It remained, only, to produce that instrument in evidence, and by its terms the question of description would have been settled, one way or the other. But, the instrument was not produced and we are relegated to other language in the conveyances for a description without reference to any other instrument.

Excluding the references to the "distributive" instruments, which were not in evidence, the property sought to be conveyed was described in the original conveyance as the grantor's "right in and to lands inherited from my deceased father, Don Ignacio Trevino, in 'El Salado';" while the property was described in the confirmatory conveyance, variously, as the grantor's "right to land which she held through inheritance from her deceased father, Don Ygnacio Trevino in the por-. tion of lands, del Salado, which are situated on the left side of the Rio Bravo; * * * her right (interest) to the land which she inherited from her deceased father, Don Ygnacio Trevino, in the portion of land del Salado; * * * her said right of land in Del Salado."

It follows that if the description was sufficient it is because Porcion 96 can be identified from the terms of that description, which may be narrowed to a recitation that the land was that inherited by the grantor from her deceased father, Ygnacio Trevino, and situated on the "left side" of the Rio Grande, and known as the lands "El Salado," or "Del Salado," which, apparently, mean the same thing. The parol testimony adduced in aid of that identification was vague, meager and unsatisfying. It was, hazily, that the phrase, "El Salado," applied in this case to a region, or ranch, or, possibly, a group of ranch or farm houses situated, inferentially, on Porcion 96. One witness said, speaking of a certain family's residence, "there was only one ranch, which was the Porcion (96), and they lived there." This evidence raised not so much an issue of fact as a surmise, which could have been considered by the trier of facts, along with other and more cogent and competent evidence upon that phase of the case.

Defendants, however, although urging this parol testimony as of much weight, did not rely entirely thereon, but introduced documentary evidence in aid of the sufficiency of the description, which will now be considered.

In their original, but abandoned, petition, plaintiffs referred to the property involved as "the Salado Porcion, which is said Porcion 96." Defendants introduced that allegation as a binding admission by plaintiffs that Porcion 96 is the "Salado" portion and sufficiently identifies the land sought to be conveyed in the instruments in question. The admission, being in an abandoned pleading, was probably conclusive of the issue, subject to explanation or repudiation by plaintiffs, which was not attempted. 33 Tex.Jur. p. 649, § 193; More v. More, Tex.Civ.App., 7 S.W.2d 1096, writ refused.

Defendants also introduced in evidence, upon this issue of description, two ancient instruments, executed in 1855 and 1856, respectively, both being deeds by which two of Dionicia's co-heirs convey-

ed their respective undivided interests in their father's estate, which one described as "the lands known as the Salado and comprising the porciones known as Numbers 96 to 100, situated on the left margin of the Rio Grande in the county of Starr, state of Texas," etc., and the other described as "the porciones of land Numbers 96, 97, 98, 99 and 100, situated in the county of Starr and state of Texas, known as the Salado, the land owned and claimed by the state (estate) of Ygnacio Trevino, deceased, in said county of 'Starr." We think those ancient documents and the pertinent recitations of fact therein may be weighed along with other evidence upon the question of the identity of the land. Those conveyances were made by her kindred and co-tenants but a few years after the original conveyance by Dionicia, and contemporaneously with her confirmatory conveyances, and the recitation that the five Porciones in question were known as the "lands of the Salado" is cogent evidence of the identity of Porcion 96, here involved.

The lands owned by the grantor's father were described in the original grant from the Spanish Sovereign, as well as in mesne conveyances down to him, so that their identity was fixed by Porcion numbers, including 96. Those lands, and particularly Porcion 96, were in those conveyances described as being on the left bank of the Rio Grande, in Starr County, Texas, and in some of the conveyances Porcion 96 was described by metes and bounds, beginning at the Rio Grande and running back, in a certain width, to a prescribed depth. In the very act of the Legislature confirming the title in Dionicia Trevino and her co-heirs, the lands were described by Porcion numbers, including 96, which was a sufficient description, and in the patent issued by the State in pursuance of the confirmatory Act, and upon which plaintiffs must and do depend for their own title, Porcion 96 is described by metes and bounds, and there can be no uncertainty about its location and identity. From that description in the patent it appears that the Porcion boundary line crosses a "fence of a rancho and well in Arroyo del Salado;" "Salado and Santa Cruz road," and "Arroyo Del Salado;" recrosses "Salado and Santa Cruz road;" "Arroyo del Salado," again crosses "Salado and Santa Cruz road," and corners at a post 200 varas east of "Salado Rancho."

■ Those references in the patent, the very conveyance through which the common source deraigned title; the recitals in contemporaneous deeds of the common source's co-tenants; the admission in plaintiffs' original, even though superseded, pleading, and the parol testimony, meager though it may be, indissolubly link the name "Salado" to Porcion 96, so that the conveyance by Dionicia Trevino of her interest in the lands "el Salado" on the "left side of the Rio Grande" which she inherited from her father, Ygnacio, necessarily included Porcion 96. We so hold.

We come now to the second branch of the appeal, in which recovery was denied to those plaintiffs who claim under Yndalecio Trevino, a grandson of Ygnacio, and who inherited from the latter an undivided interest in Porciones 96 to 100, hereinabove adverted to. While conceding that Yndalecio did inherit such interest from her said ancestor, defendants contend that by a partition deed of December 23, 1879, he was divested of that interest insofar as it included Porcion 96, since in the partition he was awarded an interest in Porcion 100 as his share, and in turn relinquished and conveyed to his co-tenants all his interest in the remaining porciones, including 96.

■ But plaintiffs claimed, by proper affidavit in this suit, that the partition deed was a forgery, and one witness testified upon the trial that the purported signature of Yndalecio Trevino, through whom all the parties here claim, was not in the handwriting of the said Yndalecio. Ordinarily, that testimony would present an issue of fact which the trial judge could not properly withhold from the jury. But the record shows, indubitably, that Yndalecio duly acknowledged the execution of the partition deed in the manner and before an authority provided by law, and in such case, even though he may not himself have actually signed his name to it, but some other person did—even though his signature was forged to it—nevertheless, by duly acknowledging the execution of it in the manner and form provided by law he adopted and made the contract his own; so that he was bound thereby. Mondragon v. Mondragon, Tex. Civ.App., 239 S.W. 650; Id., 113 Tex. 404, 257 S.W. 215; Houston Oil Co. v. Biskamp, Tex.Civ.App., 99 S.W.2d 1007. Certainly he could not question it for the

first time after the lapse of more than half a century, in which he, during the remaining thirty-five years of his life, and those claiming under him during the ensuing twenty-one years, failed to question the document.

Moreover, it appears from the questioned document that it was executed and acknowledged by Francisco Yturria, one of the co-tenants, not only for himself but as attorney in fact for the said Yndalecio Trevino, and under the rules governing ancient documents, in which one party purports to act and execute for another, his authority therefor will be presumed until refuted by evidence, which was not attempted in this case. Garner v. Lasker, 71 Tex. 431, 9 S.W. 332; Harrison v. McMurray, 71 Tex. 122, 8 S.W. 612; Republic Production Co. v. Lee, Tex.Civ.App., 95 S.W.2d 1053. In this case the document was admitted, without objections preserved in any assignment of error (except that it did not bear the "seal" of those executing it), and it will therefore be given all the effect it purports, as if admitted without objection. For, the objection that it bore no "seal" is, obviously, without merit.

The binding effect of the partition deed upon Yndalecio Trevino is further emphasized by the fact, evidenced by his subsequent acts, that he accepted and exercised dominion over the share allotted to him in that deed, to-wit, a specific part of Porcion 100. He could have effectually joined in the partition even by parol, and by accepting its benefits bound himself thereto, so as to preclude him from afterwards questioning the agreement. 32 Tex.Jur. p. 151, § 6; Johnson v. Johnson, 65 Tex. 87; Murrell v. Mandelbaum, 85 Tex. 22, 19 S.W. 880, 34 Am. St.Rep. 777; Whitaker v. Allday, 71 Tex. 623, 9 S.W. 483; Adams v. Adams, Tex. Civ.App., 191 S.W. 717, writ refused, and authorities. So, we conclude, the partition agreement was effectual, whether in writing or in parol, and particularly so since the record shows that, although he lived for thirty-five years after the partition was made, Yndalecio took no steps to repudiate it, but, on the contrary, actually accepted under it by exercising ownership and dominion over the share therein allotted him out of another porcion. Plaintiffs, claiming to be his heirs or their assigns, set up no claim that the partition was invalid for any reason until twenty-one years after Yndalecio's death, and forty-nine years after the partition was made.

The judgment is affirmed.