Opinion issued November 13, 2008











     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00579-CV




MARIE PFISTNER DELAHOUSSAYE, Appellant

V.

LISA DELAHOUSSAYE KANA, Appellee




On Appeal from the 334th Judicial District
Chambers County, Texas
Trial Court Cause No. 20174


 

MEMORANDUM OPINION

          Appellant, Marie Pfistner Delahoussaye, appeals from a judgment in favor of
appellee, Lisa Delahoussaye Kana. Delahoussaye filed suit against Kana seeking
return of real property, actual damages, exemplary damages, and attorney’s fees. 
After a jury trial, the trial court rendered a take-nothing judgment in favor of Kana,
in accordance with the jury’s verdict. In six issues, Delahoussaye asserts that (1) the
trial court erred “in denying [her] motion for declaratory judgment for recission of the
deed”; (2) the trial court erred by denying her motion for judgment notwithstanding
the verdict because the evidence is legally insufficient to support the verdict; (3) the
trial court erred by denying her motion for new trial because the evidence to certain
jury questions is legally and factually insufficient to support the verdict; (4) the jury
erred by failing to answer certain questions because it erroneously answered the
predicate questions; (5) the trial court erred by denying her motion for sanctions; and
(6) Texas Rule of Civil Procedure 327b and Texas Rule of Evidence 606 are
unconstitutional because they “deprive a party of the right to seek information
concerning possible jury misconduct during deliberation.” We conclude the evidence
is legally and factually sufficient to support the jury’s verdict, the trial court did not
abuse its discretion by denying the requested sanctions, and Delahoussaye waived her
constitutional challenges to rule 327b and rule 606. We affirm.
BackgroundDelahoussaye inherited two tracts of land on Point Barrow Road, in Baytown,
Texas from her parents. One tract is a 10.92 acre tract located on Trinity Bay. The
other, smaller tract was located across Point Barrow Road from the bay.
          In 2001, Delahoussaye was diagnosed with cancer and began treatment. 
During this time her relationship with Kana, Delahoussaye’s daughter, was good. 
They spoke regularly, and Kana was present during Delahoussaye’s surgery and took
her to two of her chemotherapy treatments. In 2002, Delahoussaye was informed she
had a mass in her right breast, and her doctor recommended removing it. However,
she wanted to wait.
          In April 2002, Kana’s husband began a job in the Clear Lake area. Because
Kana and her family lived in Conroe, her husband had an hour-long commute and
often got up before his daughters were awake, returning after they had gone to sleep. 
Kana asked Delahoussaye for two acres on the smaller tract across Point Barrow
Road on which she could build a house for her family. Delahoussaye responded she
“would be more than happy to give [Kana] two acres across the road.” 
          A few days later, Delahoussaye told Kana that instead of giving her the tract
of land across Point Barrow Road, she would give Kana the land on the bay property
because she knew Kana would take care of it and never sell it. Delahoussaye also
told Kana she would give her the entire 10.92 acres of the bay property, explaining
that it “would be real easy because [Delahoussaye] already had a survey of the whole
thing and she wouldn’t have to have it re-surveyed.”
          In May, Delahoussaye met with an attorney to have him prepare a deed for
Kana. Delahoussaye provided the legal description of the property conveyed, which
was attached as an exhibit to the deed and included all 10.92 acres of the bay
property. The deed recited the consideration for the property as the “love and
affection which I have and hold for my daughter.” Kana was not involved in
preparing the deed or meeting with the attorney and did not know of the deed until
Delahoussaye called to tell her the deed had been prepared. 
          After the deed was filed, Delahoussaye went to her attorney’s office for the
deed. Her attorney informed her the deed had been mistakenly filed in Harris County
and must be filed in Chambers County. Delahoussaye said she would take care of it. 
Delahoussaye, Kana, and Kana’s daughters drove to Chambers County, filed the
deed, and had lunch. Kana paid for the filing fee. When the original deed was
returned from Chambers County, Delahoussaye took it to Kana, telling her she should
get a safety deposit box and keep the deed in it.
          Kana and her family moved into the existing house on the bay property in late
May or early June, after the children were out of school for the summer. 
Delahoussaye would visit frequently, and Kana and her daughters would visit
Delahoussaye in Pasadena approximately once every other week. Kana and her
husband began making plans to build a new home on the bay property. Delahoussaye
went with Kana and her daughters to see a builder’s model home. Kana and her
husband began making improvements, including putting in a large septic system. 
Delahoussaye paid approximately half of the price of the septic system.
          In August, shortly before school started, Delahoussaye called Kana and told her
that she wanted to put a trailer on the bay property. Kana questioned her mother
about the trailer. Delahoussaye admitted she did not want to put a trailer on the
property, but it was her other daughter, Kana’s half-sister, who wanted the trailer. 
Kana responded that she would not allow a trailer on the property because it was not
what Delahoussaye really wanted. Several hours later, Delahoussaye called Kana
again and said she was going to have a lawyer prepare the papers necessary to convey
the bay property back to Delahoussaye and she wanted Kana to sign the papers the
next day. Kana replied that she would not give the bay property back. Delahoussaye
demanded the return of some personal property, and Kana gave her the items.           Delahoussaye and Kana did not speak after that. In September, Kana received
a letter from Delahoussaye’s attorney demanding the bay property. Kana received
one or two more similar letters. Finally, in December 2002, Kana was served with
this lawsuit.
          In contrast, Delahoussaye testified that when she told Kana she would be happy
to give her two acres on which to build a home, it was with the understanding that
Kana would take care of Delahoussaye for the rest of her life. According to
Delahoussaye, the conveyance of the entire 10.92 acres of the bay property was a
mistake and should have been only two acres. In May 2002, before the deed was filed
in Chambers County, Delahoussaye filed a protest with the Chambers County
Appraisal District. The protest included an affidavit explaining that she had
transferred the land to Kana in return for the agreement that Kana and her family
would care for her because she had cancer. Delahoussaye states that she paid for
numerous improvements on the bay property and the existing house in anticipation
of moving onto the property.
          Delahoussaye explained she wanted the trailer to be placed on the property
because the existing house was too small and had only one bathroom. Delahoussaye
stated Kana and her husband were always having parties and she needed a place
where she could rest. When she mentioned placing a trailer on the property, Kana
told her “Don’t come down here no more.” Kana sent letters to Delahoussaye
informing her that if she came on the property it would be considered trespassing and
informing her of the possible criminal penalties. Delahoussaye asked Kana to return
the property and filed this suit when Kana refused.
 
Declaratory Judgment and Recission of the Deed
          In her first issue, Delahoussaye contends the trial court erred by denying her
“Motion for a Declaratory Judgment under the Texas Civil Practice and Remedies
Code, Chapter 37, Declaratory Judgments, for the recission of the deed made the
subject of this lawsuit because it was obtained by fraud and breach of contract by
[Kana] and alternatively, a mistake.” Delahoussaye asserts (1) “there is sufficient
evidence to show that [Kana] breached the contract”; (2) Delahoussaye was entitled
to recission or reformation because Kana insisted the bay property was a gift from
Delahoussaye, but the burden of proof was on Kana to prove a gift; and (3)
alternatively, the evidence showed that Delahoussaye only intended for two acres to
be a gift, not the entire tract. 
          Kana responds that fraud, breach of contract, and mistake are “inherently based
on fact questions. The jury held in favor of [Kana] on . . . breach of contract and
fraud. [Delahoussaye] failed to submit a question to the jury on mistake, and,
therefore, waived that potential ground.” Kana also asserts “the deed itself clearly
indicate[s] that it is a gift deed and the description of the property conveyed is equally
clear.” 
          Delahoussaye requested declaratory relief in her petition. After the jury’s
verdict, she filed a “Motion for Judgment Non Obstante Veredicto and for
Declaratory Judgment.” The only ground she raised to support her motion for
declaratory judgment was that Kana had the burden to prove the existence of a gift
and that she failed to establish that Delahoussaye intended to make a gift of the bay
property to Kana. However, the issue of whether the transfer of the property was a
gift was not submitted to the jury.
          The elements required to establish the existence of a gift are: (1) intent to make
a gift; (2) delivery of the property; and (3) acceptance of the property. Panhandle
Baptist Found., Inc., v. Clodfelter, 54 S.W.3d 66, 72 (Tex. App.—Amarillo 2001, no
pet.) (citing Roberts v. Roberts, 999 S.W.2d 424, 432 (Tex. App.—El Paso 1999, no
pet.)). “In determining whether a gift was intended by the execution of a deed, we
must look to the facts and circumstances surrounding its execution in addition to the
recitation in the deed itself.” Id., 54 S.W.3d at 72 (citing Haile v. Holtzclaw, 414
S.W.2d 916, 927 (Tex. 1967)) . 
          “A party objecting to a charge must point out distinctly the objectionable matter
and the grounds of the objection. Any complaint as to a question, definition, or
instruction, on account of any defect, omission, or fault in pleading, is waived unless
specifically included in the objections.” Tex. R. Civ. P. 274. “Failure to submit a
question shall not be deemed a ground for reversal of the judgment, unless its
submission, in substantially correct wording, has been requested in writing and
tendered by the party complaining of the judgment; provided, however, that objection
to such failure shall suffice in such respect if the question is one relied upon by the
opposing party.” Tex. R. Civ. P. 278.
          The issue of whether a gift was intended is a question of fact, which the jury
would need to decide. See Panhandle Baptist, 54 S.W.3d at 72 (citing Haile, 414
S.W.2d at 927). Here, when the trial court asked the parties about the proposed
charge, Delahoussaye stated, “No objection from the plaintiff, your honor.” Thus,
any complaint Delahoussaye has regarding the failure to submit or obtain an answer
concerning her intent to make a gift to Kana was waived by failing to object or
otherwise notify the trial court of the complaint. See Tex. R. Civ. P. 274, 278. 
          We overrule Delahoussaye’s first issue.Evidentiary Issues
          In her second and third issues, Delahoussaye challenges the legal and factual
sufficiency of the evidence to support the jury’s verdict. In her fourth issue,
Delahoussaye contends that the jury erred by not answering certain questions,
because it erroneously answered the predicate questions.
A.      Standard of Review
          When a party attacks the legal sufficiency of an adverse finding on an issue on
which it has the burden of proof, it must show the evidence establishes, as a matter
of law, all vital facts in support of the desired finding. Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001). In a legal sufficiency review, we consider the
evidence in the light most favorable to the verdict and indulge every reasonable
inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005). The ultimate question is whether the evidence, crediting favorable evidence
if reasonable jurors could and disregarding contrary evidence unless reasonable jurors
could not, would permit reasonable and fair-minded people to reach the verdict under
review. Id. at 827.
          In determining the factual sufficiency of the evidence to support a jury’s
finding, courts of appeals are to weigh all the evidence, both for and against the
finding. Dow Chem. Co., 46 S.W.3d at 242. In reviewing a factual sufficiency
challenge to a finding where the burden of proof is on the complaining party, that
party must show that “the adverse finding is against the great weight and
preponderance of the evidence.” Id. In conducting our review, we may not substitute
our judgment for that of the jury, which is the sole judge of the credibility of
witnesses and the weight to be given to their testimony. Golden Eagle Archery, Inc.
v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).
          B.      Judgment Notwithstanding the Verdict
          In her second issue, Delahoussaye asserts the trial court erred by denying her
motion for judgment notwithstanding the verdict because the evidence is legally
insufficient to support the jury’s answers to questions 1, 7, 8, 10, and 14.
                    1. Question 1
          Question 1 asked the jury,
Did Marie Delahoussaye and Lisa Marie Delahoussaye Kana agree that
in return for two acres of land located in Chambers County, Lisa Marie
Delahoussaye Kana, would care for Marie Delahoussaye on the
remaining portion of the Subject Property for the remainder of Marie
Delahoussaye’s life?

The jury answered “no” to this question. Although Delahoussaye testified that such
an agreement existed, Kana denied it. In addition, the only consideration recited in
the deed of the bay property to Kana was Delahoussaye’s “love and affection” for
Kana. Considering the evidence of Kana’s testimony and the recital in the deed in the
light most favorable to the verdict, Delahoussaye did not establish as a matter of law
that Kana promised to take care of her in exchange for the bay property. We conclude
the evidence is legally sufficient to support the answer to Question 1.
                    2. Question 7       
          Question 5 asked, “Did a relationship of trust and confidence exist between
[Delahoussaye] and [Kana]?,” to which the jury responded “no.” In response to
Question 6, the jury also found that Kana did not comply with a fiduciary duty to
Delahoussaye. The jury was asked, in Question 7, 
What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Marie Delahoussaye for her damages, if any, that
resulted from Lisa Marie Delahoussaye Kana’s breach of fiduciary duty?

          (a) Loss of use of the Subject Property sustained in the past.
 
(b) Loss of use of the Subject Property sustained in the future.

The jury answered “0” for both past and future loss-of-use damages.
          Delahoussaye contends the evidence shows the bay property was worth
approximately $800,000 and, in reliance on Kana’s promise to take care of her, she
had also made expenditures to improve the property. However, the jury was not
asked the value or worth of the property or informed that the value was the proper
measure of damages; nor did the jury receive any question or instruction concerning
Delahoussaye’s out of pocket expenses. Instead, the jury was asked to find “Loss of
use of the Subject Property” as the measure of damages. Delahoussaye does not
identify any evidence to establish any damages for loss of use as a matter of law. 
Accordingly, we conclude the evidence is legally sufficient to support the answer to
Question 7.
                    3. Question 8
          Question 8 asks, “Did Marie Delahoussaye substantially rely to her detriment
on Lisa Marie Delahoussaye Kana’s promise, if any, and was this reliance foreseeable
by Lisa Marie Delahoussaye Kana?” The jury answered “no.”
          Delahoussaye contends, “Evidence that [Delahoussaye] relied to her detriment
on [Kana]’s promise to care for her is shown by her transfer of the land worth over
$800,000, thousands of dollars for improvements to the bay place, attorney’s fees,
depositions and court costs.” We must view Kana’s testimony and the absence of a
promise mentioned as consideration in the deed in the light most favorable to the
verdict. Therefore, Delahoussaye did not establish her detrimental reliance as a
matter of law. We conclude the evidence is legally sufficient to support the answer
to Question 8.
          In her argument, Delahoussaye also states that questions 5, 6, 7, and 8 are in
conflict. “To preserve error that the jury’s findings are inconsistent, the complaining
party must raise an objection in the trial court before the jury is discharged.” 
Kennedy Ship & Repair, L.P. v. Pham, 210 S.W.3d 11, 24 (Tex. App.—Houston [14th
Dist.] 2006, no pet.). Delahoussaye failed to raise the issue of an inconsistency or
conflict in the jury’s verdict prior to the jury’s discharge, and thus has not preserved
this issue for appeal. See id. 
                    4. Question 10
The jury was also asked,
Did Lisa Marie Delahoussaye Kana commit fraud against Marie
Delahoussaye?
 
Fraud occurs when— 
 
(a)a party makes a material misrepresentation;
 
(b)the misrepresentation is made with knowledge of its
falsity or made recklessly without any knowledge of
the truth and as a positive assertion;
 
(c)the misrepresentation is made with the intention that
it should be acted on by the other party; and
 
(d)the other party relies on the misrepresentation and
thereby suffers injury.
 
“Misrepresentation” means:
 
(a)a false statement of fact; or
 
(b)a promise of future performance made with an
intent, at the time the promise was made, not to
perform as promised.
The jury responded “no.”
          As noted above, in our discussion of Questions 1 and 8, the record contains
conflicting evidence concerning whether Kana made a promise to Delahoussaye. 
Viewing the evidence in the light most favorable to the verdict, we conclude the 
evidence is legally sufficient to support the answer to Question 10. 
                    5. Question 14
          Question 14 asked the jury,
Did Lisa Marie Delahoussaye Kana commit intentional infliction of
emotional distress against Marie Delahoussaye ?
 
The elements of intentional infliction of emotional distress are as
follows:
 
(a)the defendant acted intentionally or recklessly;
 
(b)the conduct was extreme and outrageous;
 
(c)the plaintiff suffered emotional distress as a result of
the defendant’s acts; and
 
(d)the plaintiff’s distress was severe.
Extreme and outrageous conduct is conduct “so outrageous in character,
and so extreme in degree, as to go beyond all possible bounds of
decency and to be regarded as atrocious and utterly intolerable in a
civilized community.”
 
Severe emotional distress includes highly unpleasant mental reactions,
such as extreme grief, shame, humiliation, embarrassment, anger,
disappointment, or worry.

The jury answered “no.”
          Delahoussaye contends that the evidence “clearly showed” Kana’s actions were
intended to cause her “a great deal of emotional distress.” Delahoussaye asserts that
Kana erased Delahoussaye’s name from concrete that had been poured years before,
refused to allow Delahoussaye to visit her granddaughters, refused to answer
telephone calls, barred Delahoussaye from the bay property, and threatened
Delahoussaye with fines and imprisonment. Delahoussaye does not expressly state
that these acts were “extreme and outrageous” or “atrocious and utterly intolerable.”
          Kana does not dispute that the acts occurred. She does, however, offer some
explanation. Kana stated that she only put up “no trespassing” signs after she started
having “incidents” on the property. Someone stole the chain to the front gate,
someone put putty or glue in the keyhole of the lock on the front gate, and someone
threw a rock through Kana’s truck window. Kana testified that neighbors told her
that Delahoussaye had been seen driving on the bay property. After all these
incidents, and receiving several letters threatening to sue her over the return of the
bay property, Kana sent a letter to Delahoussaye at the end of November, stating,
Be advised that you, Marie Delahoussaye, are absolutely forbidden to
enter and/or remain upon [the bay property] at any time. . . . . 
 
Be advised that should you enter and/or remain upon the property
described above after receiving this notice, a charge of Criminal
Trespass (PC 30.05) will be filed against you.
 
You may be arrested and put in jail to be held to face a Class B
Misdemeanor offense of Criminal Trespass, which carries a maximum
possible penalty of a $2,000 fine, up to 180 days in jail, and/or both.

          The acts described by Delahoussaye were within Kana’s legal rights. “There
is no liability for intentional infliction of emotional distress where an actor does no
more than insist on his legal rights.” Torres v. GSC Enterprises, Inc., 242 S.W.3d
553, 563 (Tex. App.—El Paso 2007, no pet.) (citing Lang v. City of Nacogdoches,
942 S.W.2d 752, 760 (Tex. App.—Tyler 1997, writ denied)); see also McClendon v.
Ingersoll-Rand Co., 757 S.W.2d 816, 820 (Tex. App.—Houston [14th Dist.] 1988),
aff’d, 807 S.W.2d 577 (Tex. 1991). Because the evidence shows that Kana only
performed acts that were within her legal rights and because Kana offered a
reasonable explanation for some of the acts, we conclude the jury’s answer to
Question 14 is supported by legally sufficient evidence.
                    6. Conclusion
          We overrule Delahoussaye’s second issue.
          C.      Motion for New Trial 
          In her third issue, Delahoussaye contends the trial court erred by denying her 
motion for new trial because the evidence is legally and factually insufficient to
support the jury’s answer to Questions 1, 7, 8, 10, and 14. Having already discussed
the legal sufficiency of the evidence, in the discussion of Delahoussaye’s second
issue, we need only address the factual sufficiency of the evidence.
                    1. Question 1
          As discussed above, Delahoussaye testified that she did not intend the entire
10.92 acres of the bay property as a gift. Rather, Delahoussaye only intended to make
a gift of two to Kana in exchange for Kana’s promise to care for Delahoussaye for the
rest of her life. However, Kana testified that no such promise was made. The deed
transferring the property describes all 10.92 acres and states the consideration is
Delahoussaye’s “love and affection” for Kana. Delahoussaye’s attorney testified that
she gave him the description of the property and that he understood that she wanted
a gift deed to be prepared. The jury was also presented evidence that Delahoussaye
made gifts of real property in the past to her other children.
          Viewing this conflicting evidence in a neutral light, and deferring to the jury
for determinations of credibility and the weight to be given to testimony, we cannot
conclude that the jury’s answer to Question 1 is against the great weight and
preponderance of the evidence. See Golden Eagle Archery, Inc., 116 S.W.3d at 761. 
                    2. Question 7       
          As discussed above, the sole measure of damages the jury was asked to
consider was loss of use of the property. Delahoussaye did not present any evidence
of her damages from loss of use. Thus, the jury’s answer was not against the great
weight and preponderance of the evidence.
                    3. Question 8
          We must view conflicting evidence in a neutral light and defer to the jury on
questions of credibility. Because the jury received conflicting evidence and was free
to assess which evidence was more credible, we conclude that its answer to Question
8 is not against the great weigh and preponderance of the evidence. See id. at 761.
                    4. Question 10
          We overrule Delahoussaye’s challenge to this question because we must view
conflicting evidence in a neutral light and defer to the jury on questions of credibility. 
See id. 
                    5. Question 14
          As noted above in the discussion of legal sufficiency, Kana’s insisting on her
rights is not enough to impose liability for “extreme and outrageous” conduct. 
Because the jury could have reasonably concluded that Kana simply exercised her
legal rights, we conclude that the jury’s answer is not against the great weight and
preponderance of the evidence. See Dow Chem. Co., 46 S.W.3d at 242.
                    6. Conclusion
          We overrule Delahoussaye’s third issue.
          D.      Jury’s Failure to Answer All Questions

          In her fourth issue, Delahoussaye contends that the jury erred by not answering
certain questions, because it erroneously answered the predicate questions. 
Specifically, Delahoussaye’s fourth issue states,
THE JURY’S FAILURE TO ANSWER QUESTIONS 2, 3, 4, 9, 11, 12,
13 WAS ERROR BECAUSE [DELAHOUSSAYE] HAD PRODUCED
SUFFICIENT EVIDENCE TO SUPPORT ANSWERS TO ALL THE
QUESTIONS.
 
AS A RESULT OF ANSWERING NO TO QUESTION NO. 1, THE
JURY DID NOT ANSWER QUESTIONS, 2, 3, 4[.]
 
AS A RESULT OF ANSWERING NO TO QUESTION NO. 7 AND 8,
THE JURY DID NOT ANSWER QUESTION NO. 9[.]
 
AS A RESULT OF ANSWERING NO TO QUESTION NO. 10, THE
JURY DID NOT ANSWER QUESTIONS 11, 12, 13[.]
 
AS A RESULT OF ANSWERING NO TO QUESTION NO. 14, THE
JURY DID NOT ANSWER QUESTIONS 11, 12, 13[.]
 
[DELAHOUSSAYE] ADOPTS AND INCORPORATES THE OFFER
OF PROOF AND AUTHORITIES CITED IN ISSUES I, II, III.

          Thus, this issue is another challenge to the sufficiency of the evidence. Having
already determined legally and factually sufficient evidence supports the jury’s
verdict concerning Questions 1, 7, 8, 10, and 14 in our discussion of her second and
third issues, we overrule Delahoussaye’s fourth issue.
Motion for Sanctions
          In her fifth issue, Delahoussaye asserts the trial court erred by denying her
motion for sanctions for Kana’s abuse of process.
          A. Standard of Review
          We review the imposition of sanctions for an abuse of discretion. Low v.
Henry, 221 S.W.3d 609, 614 (Tex. 2007) (citing Am. Flood Research, Inc. v. Jones,
192 S.W.3d 581, 583 (Tex. 2006); Cire v. Cummings, 134 S.W.3d 835, 838 (Tex.
2004)). A reviewing court may reverse the trial court’s ruling only if the trial court
acted without reference to any guiding rules and principles, such that its ruling was
arbitrary or unreasonable. Id. (citing Cire, 134 S.W.3d at 838–39). Generally, courts
presume that pleadings and other papers are filed in good faith. Id. (citing GTE
Commc’ns Sys. Corp. v. Tanner, 856 S.W.2d 725, 730 (Tex. 1993)). The party
seeking sanctions bears the burden of overcoming this presumption of good faith. Id.
          Chapter 10 of the Texas Civil Practice and Remedies Code and rule 13 of the
Texas Rules of Civil Procedure allow a trial court to sanction an attorney or a party
for filing motions or pleadings that lack a reasonable basis in fact or law. The
signatory of a pleading or motion certifies that each claim, each allegation, and each
denial is based on the signatory’s best knowledge, information, and belief, formed
after reasonable inquiry. Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon
2002). Section 10.001 requires that each claim and each allegation be individually
evaluated for support. Id. Rule 13 states that the signatory of a pleading certifies
that, to the best of the signatory’s knowledge, information, and belief formed after
reasonable inquiry, the instrument signed is “not groundless and brought in bad faith
or groundless and brought for the purposes of harassment.” Tex. R. Civ. P. 13.
          B. Counterclaims
          Delahoussaye contends that Kana’s counterclaims for fraud and breach of
contract were sanctionable because the extensive discovery conducted in this case
“disproved” Kana’s claims for damages. Specifically, Delahoussaye contends that
Kana made a profit of approximately $50,000 on the sale of her home in Conroe. 
Kana responds that Delahoussaye’s requested sanctions were waived because
Delahoussaye did not file a motion or submit the matter for hearing.
                    1. Waiver
          To preserve a complaint for appellate review, a party must present to the trial
court a timely request, motion, or objection, state the specific grounds therefor, and
obtain a ruling. Tex. R. App. P. 33.1; see Holland v. Wal-Mart Stores, Inc., 1 S.W.3d
91, 94 (Tex. 1999); In re C.O.S., 988 S.W.2d 760, 764 (Tex. 1999); Gen. Chem.
Corp. v. De La Lastra, 852 S.W.2d 916, 920–21 (Tex. 1993). Here, Delahoussaye’s
request for sanctions was initially filed as part of her answer to Kana’s counterclaims. 
In her motion for new trial, she attached the answer and request for sanctions as an
exhibit. Delahoussaye also briefed her grounds for requesting sanctions concerning
Kana’s counterclaims in her motion for new trial. The trial court overruled the
motion for new trial. We conclude Delahoussaye’s request for sanctions was
presented to the trial court and the trial court overruled it. Therefore, the issues raised
in the motion for new trial were not waived for failure to hold a hearing or obtain a
ruling.
                    2. Merits of Sanctions Request 
          The sale of Kana’s home in Conroe was not an issue in this case. Delahoussaye
does not assert that Kana was seeking damages from the sale of that house. A review
of Kana’s pleadings indicate that she based her counterclaims upon Delahoussaye’s
conduct in connection with the transfer of the bay property. Thus, the profit or loss
from the sale of the house in Conroe is irrelevant to the determination of whether the
trial court abused its discretion in denying sanctions. 
          Although Delahoussaye asserts that the evidence disproves many of the items
that Kana and her husband claimed were paid for improvements to the property, she
does not assert that all these items were disproved. For example, Kana’s husband
testified that he and Kana paid $2,800 for the septic system, with Delahoussaye
paying $3,000, and that he and Kana also paid taxes on the bay property since 2002. 
Delahoussaye does not address these items in her motion for sanctions or appellate
brief. Because Kana presented some evidence of damages to support her
counterclaims, we cannot conclude that the trial court abused its discretion by acting
without reference to guiding rules or principles when it denied Delahoussaye’s
request for sanctions based on those counterclaims. See Low, 221 S.W.3d at 614. 
          C. Experts
          Delahoussaye also contends that the trial court erred by failing to sanction
Kana and her attorney for designating experts “done for the sole purpose of creating
rabbit trails and causing additional expense to [Delahoussaye].” Specifically,
Delahoussaye identifies two experts, Dr. Stockwell and Mr. Cotton. Delahoussaye
did not assert the designation of these experts as sanctionable conduct in her request
for sanctions, although she did brief them in her motion for new trial. Although
Delahoussaye did not entirely waive her request for sanctions for failure to have a
hearing or obtain a ruling as asserted by Kana, we conclude that Delahoussaye
waived any complaint concerning the designation of experts for failure to timely raise
the issue before the trial court. See Trahan v. Lone Star Title Co. of El Paso, Inc.,
247 S.W.3d 269, 282–83 (Tex. App.—El Paso 2007, no pet.) (citing Remington Arms
Co., Inc. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993)) (holding failure to obtain
pretrial ruling on discovery disputes that exist before commencement of trial waives
any claim for sanctions based on that conduct).
          D. Conclusion 
          We overrule Delahoussaye’s fifth issue.
Constitutional Challenge
          In her sixth issue, Delahoussaye asserts Texas Rule of Civil Procedure 327b
and Texas Rule of Evidence 606 are unconstitutional because “they deprive a person
of their [sic] constitutional rights of due process and equal protection by not
permitting the questioning [of] a juror about effects of anything on any juror’s mind,
emotions or mental processes, including possible jury misconduct if it occurred
during deliberations.”


 Delahoussaye raises this complaint for the first time on
appeal. Accordingly, Delahoussaye waived this point by not presenting it to the trial
court. Tex. R. App. P. 33.1; Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993)
(holding due process and equal protection challenges to statute “must have been
asserted in the trial court in order to be raised on appeal”); In the Interest of K.C.M.,
4 S.W.3d 392, 394 (Tex. App.—Houston [1st Dist.], 1999, pet denied) (holding
constitutional challenge to “vague and ambiguous” statute waived when raised for
first time on appeal), disapproved of on other grounds by In re C.H., 89 S.W.3d 17,
26 (Tex. 2002).
          We overrule Delahoussaye’s sixth issue.
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Keyes, and Alcala.