**Byrum HAILE et al., Petitioners,**

v.

**Clyde H. HOLTZCLAW, Respondent.**

**No. A-11390.**

Supreme Court of Texas.

April 19, 1967.

Rehearing Denied May 24, 1967.

Underwood, Wilson, Sutton, Heare & Berry, Clayton Heare and Harlow Sprouse, Amarillo, for petitioners.

Sanders, Scott, Saunders, Brian & Humphrey, C. J. Humphrey, Amarillo, for respondent.

SMITH, Justice.

Respondent, Clyde H. Holtzclaw, who claims title to a ⅛th interest in the properties of W. B. and Irene Haile under the will of W. B. Haile, sued petitioners, Byrum Haile, et al., seeking: to set aside a deed and remove cloud from title to his claimed fractional interest in the W. B. Haile lands in Hutchinson County, Texas; an accounting for royalties and rentals allegedly withheld from him by petitioners and for damages. The petitioners, as trustees of the W. B. Haile estate, filed a cross-action in which they asserted that through a mistake of law occasioned by an erroneous legal interpretation of the will of W. B. Haile they paid respondent $36,253.33, which amount they were entitled to recover from him. In the same cross-action the petitioners asked for a declaratory judgment holding that the respondent had no interest, legal or equitable, in the assets of the W. B. Haile estate. The jury found respondent did not have the mental capacity to execute the deed in question and judgment was entered setting it aside. The judgment declared respondent the owner of an undivided ⅛th of the properties of W. B. and Irene Haile under the will of W. B. Haile; awarded respondent damages in the amount of the difference between that actually paid

him for the four years preceding the filing of this cause and the amount the trial court decreed should have been paid him for that period; and denied petitioners any relief on their cross-action. The Court of Civil Appeals affirmed the trial court's judgment awarding the respondent an undivided ⅛th interest in the properties; affirmed the award of damages; affirmed the denial of relief sought in the petitioner's cross-action; and, reversed and remanded that portion of the court's judgment which had set aside the deed for want of mental capacity. 400 S.W.2d 603.

From an examination of the judgment of the trial court we find that it decreed Holtzclaw the owner of an undivided ⅛th interest, subject to a life estate in Irene in ²⁄₁₁ths of said ⅛th, in the property passing under the will of W. B. Haile. In its judgment the court itemized the property—both mineral interests and real estate—to which Holtzsclaw was entitled to a ⅛th share. This judgment when compared to the inventory of W. B. Haile's estate reveals that Holtzclaw received his interest from W. B. Haile's separate property and the community property of W. B. and Irene Haile. In other words, the trial court was of the opinion that W. B.'s will was effective to pass both his separate property and the community property of him and his wife.

For convenience the petitioners will hereinafter be designated as "The Hailes", the testator and testatrix as "W. B." and "Irene", respectively, and the respondent will be designated as "Holtzclaw".

Both parties filed applications for writ of error. Holtzclaw's application was granted because of the granting of Haile's application. It is undisputed that Holtzclaw is the surviving husband of Betty, a daughter of W. B., who died testate subsequent to the death of W. B. and prior to the death of Irene. Betty named Holtzclaw as the sole legatee and devisee of her estate.

On November 20, 1948, W. B. died testate leaving a will which was substantially identical in its terms to the will of his wife, Irene. Both wills were executed on the same day. The parties agree that the wills are ambiguous.

The pertinent provisions of W. B.'s will are:

"*FIVE* It is my will and desire if I shall pre-decease Irene Haile, that I do hereby give, devise, and bequeath unto my beloved wife, Irene Haile, all personal property which I may own at the time of my death including cash on hand and in the bank, together with all other personal property, with the full right to manage and dispose and expend same.

"It is further my will that all income from all royalty interest shall be divided into eleven equal parts, and that each of our beloved children named below shall receive an undivided one-eleventh and that Irene Haile shall receive two-elevenths. That there will be reserved at all times by the executor sufficient money to pay all inheritance, income and other taxes of every kind and character.

"* * *

"*SEVEN* It is my will and desire and I do hereby direct that if I should predecease Irene Haile she shall have the sole management and control and direction of all of my separate estate as well as her separate estate, and that so long as Irene Haile shall live, the royalty income from said property shall be divided as provided in Paragraph Five, that is the said Irene Haile shall receive two-elevenths and each of our children shall receive one-eleventh of such income, after deduction of an adequate reserve for the payment of taxes. Proper division of said funds shall be made within a reasonable length of time after the royalty is received, not to exceed thirty days, unless all our children below named consent to a further extension, which they may do for the purpose of convenience in distributing said funds. With reference to all other income except royalty income, it is my

wish and desire that my beloved wife shall have full right to expend and dispose of same should she so desire. Whenever the term 'royalty income' is used in this will, it shall be construed to mean all income derived from the production and sale of oil, gas and other minerals, including royalty, over-riding royalty, and oil, gas and casinghead gas payments.

"*EIGHT* That it is my wish and desire, and I hereby direct, after consultation and full understanding with my beloved wife, Irene Haile, that if Irene Haile should pre-decease me, that our children, including our own child, Byrum Haile and my children, by a former marriage, Verdie Herrington, Chlorie Haile, Jim Haile, Betty B. Holtzclaw, Meade Haile and Nadine Haile Martin, and Mrs. Irene Haile's children by a former marriage, namely Mrs. Mary Fry Gray and Mrs. Walta Fry Russ, shall upon my death be the equal owners of all my property both real, personal and mixed, of every kind and character whatsoever and that all income from said property shall be divided equally between all of said named children without reference to community property rights, or to any separate property rights of either of us hereby stating that it is my will and desire that upon my death, that all of my property together with all the property of my beloved wife, Irene Haile, shall be considered as community property without reference to any separate property rights which either of us may claim.

"\* \* \*

"*TEN* It is my will and desire, and I hereby direct that the real estate, and any personal property used in connection with said residence, which we own in Roaring Springs, Texas, in Motley County, which is being used at this time by Mary Sampson as a residence, shall be and continue as her residence during her life-time, and she is hereby given and granted a life estate therein; but at her death (or at my death if she should pre-decease me) then it is my will and desire, that said property shall be considered a part of the estate, and the executor or executors above named shall have the right to sell and dispose of same, at their discretion, and the proceeds to be divided equally among our children, named above, except that if Irene Haile shall be living, the proceeds shall be divided into eleven equal parts, and two-elevenths shall be given to Irene Haile."

W. B.'s will was probated on January 4, 1949, and thereafter Irene qualified as independent executrix. Betty died on March 31, 1951. Until her death on September 18, 1957, Irene, as executrix, distributed ⅟₁₁th of the income from the properties to Betty and eight other children and retained ²⁄₁₁ths for herself. Following Betty's death Irene paid Betty's ⅟₁₁th to Holtzclaw. After Irene died the ⅟₁₁th share was paid to Holtzclaw by trustees appointed by a court order. On May 30, 1963, Holtzclaw deeded to the "W. B. Haile estate" the property allegedly inherited by him from his wife, Betty, subject to a life estate reserved in himself. This is the deed which Holtzclaw seeks to set aside.

The Hailes take the position that the only dispositive portions of W. B.'s will are paragraphs 5 and 7, supra; that paragraph 8, supra, was ineffectual to pass any property as its provisions were to become operative *only* if Irene predeceased W. B.; that Betty received only a royalty income under W. B's will and this interest was measured by the life of Irene; that no real property passed to Betty under W. B.'s will; that the life estate was followed by a contingent remainder in the appointees of Irene in *her* will, and this remainder became vested in the children named in paragraph 8 [1] of Irene's will when she died; that

---

1. Paragraph 8 of Irene's will was the same as paragraph 8 of W. B.'s supra, except that it substituted "that if W. B. should predecease me" for "that if Irene should predecease me."

since Betty was dead when Irene's will took effect, the gift to her lapsed and was devised according to paragraph 8 (and a codicil[2]) of Irene's will. Thus, it is argued that Holtzclaw had no property which could be the subject of the deed to the "W. B. Haile estate."

Holtzclaw argues that the wills were contractual in nature with the result that the property would be disposed of by the will of the first to die; that Irene was put to an election of whether to accept the benefits conveyed to her by W. B.'s will or claim her community assets; that having exercised that option, Irene accepted the benefits under W. B.'s will and all real property and income passed to her and the children living at the death of W. B.; that each child living at W. B.'s death inherited an undivided ⅛th interest in fee in all the property owned by W. B. and Irene, subject to a ⁹⁄₁₁th portion of the income from the property being paid to Irene for life; that Betty's interest was therefore vested and was capable of being devised to Holtzclaw. It is further argued that the Hailes are estopped from asserting that Holtzclaw owned no interest in the land since the trustees had paid to him ¹⁄₁₁th of the income until this suit was filed. We are not in complete agreement with either the Hailes or Holtzclaw.

■ A cardinal rule in construing a will is for the court to determine the intention of the testator. To this end resort may be made to the provisions of the will as a whole and the surrounding circumstances, rather than a particular or isolated provision, if the intention be not clearly expressed. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 57 A.L.R.2d 97 (1955). It is also a rule that by the very fact a will is left, an implication arises that the testator did not intend to die intestate. Ferguson v. Ferguson, 121 Tex.

119, 45 S.W.2d 1096, 79 A.L.R. 1163 (1931). A construction that results in partial intestacy is not favored in the law. Rust v. Rust, 211 S.W.2d 262 (Tex.Civ.App.—Austin 1948) aff'd, 147 Tex. 181, 214 S.W.2d 462 (1948). The rule last stated, however, must yield to a construction resulting in partial intestacy when the testator has failed, through design or otherwise, to make a complete disposition of his property. Carr v. Rogers, 383 S.W.2d 383 (Tex. Sup.1964); Fain v. Fain, 335 S.W.2d 663 (Tex.Civ.App.—Ft. Worth 1960, writ ref'd).

■ Another principle pertinent to the case now before us and deeply embedded in the law is the presumption that a testator only intended to dispose of that which was his. Avery v. Johnson, 108 Tex. 294, 192 S.W. 542 (1917). This presumption may only be overcome by language which clearly and without equivocation manifests a contrary intent. It has been said that for the presumption to be rebutted the will must be "open to no other construction" than that the testator undertook to dispose of the surviving spouse's property or property rights. Avery v. Johnson, supra; Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670 (1955); Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92 (1940). It is not sufficient that the will *may* be construed to reveal an intention to dispose of the survivor's property. Hocker v. Piper, 2 S.W.2d 997 (Tex. Civ.App.—El Paso 1928, writ ref'd).

■ To be considered in connection with the presumption stated above is the language in paragraph 8 of W. B.'s will stating that he desired his property, together with the property of his wife, to be considered as community property. Arguably this language could be interpreted to mean that W. B. intended to devise to Irene ½ of all his separate property. From an examination of the provisions in that paragraph, however, we find that those provi-

2. The codicil pointed out that Betty was dead and stated that Irene wanted the remaining children to divide the property equally. She expressly stated it was her desire to exclude Betty's heirs, assigns, legatees or successors in interest from having an interest in the property.

sions were conditioned on Irene predeceasing W. B. Since this event did not occur, the possible dispositive provisions of paragraph 8 were rendered inoperative.

We must now determine from an examination of W. B.'s will what disposition, if any, was made of the subject property.

■ We hold that Irene was the sole recipient of all of W. B.'s personal property, i. e., his separate personal property and his ½ community interest in any personal property. This much is clear from the provisions of paragraph 5 of the will wherein it was stated that Irene was to have all his personal property, including any cash on hand, which he owned at the time of his death. In fact, neither party makes any contention to the contrary.

### The Real Property

■ As will be observed below, we have segregated our discussion of the disposition, if any, of the real property from the alienation of the royalty interests. In so doing, we are aware that in Texas a royalty interest is regarded as an incorporeal interest in the realty itself. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741 (1934); Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53 (1937); State v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112, 134 S.W.2d 1016, 128 A.L.R. 843 (1939); Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988 (1949); Clyde v. Hamilton, Tex., 414 S.W.2d 434 (1967). This approach becomes necessary as we have concluded that W. B. made no disposition of the real property, but did make a limited disposition of the royalties.

At the outset we pose the question—what language in the will can fairly be construed to dispose of the real property? The Hailes take the position that the provision of paragraph 7 which gave Irene the power to expend and dispose of the non-royalty income carried with it the fee title to the corpus. Holtzclaw argues that paragraph 8 showed W. B.'s intent to vest the fee title to the real property in the children. We do not agree with either of these positions.

■ We are aware of no Texas cases which have made an outright holding that the right to expend the income from a named real property carries with it the fee title to the corpus. We decline to use this case as a vehicle to innovate such a rule of law in this jurisdiction.

The provisions in paragraph 8 could not vest the fee title to the real property in the children as its provisions were contingent on Irene predeceasing W. B. As heretofore stated, since W. B. was the first to die, paragraph 8 disposed of nothing.

■ There being no words in W. B.'s will which could be deemed to pass title to the real property, we hold that as to that property W. B. died intestate. Since Betty was alive on W. B.'s death, she inherited an undivided ⅙th interest in his separate real property. Irene, as the surviving spouse, would be entitled to a life estate in ⅓rd of W. B.'s separate real property with a remainder in the children of the decedent upon the termination of her life estate. Vernon's Tex.Prob.Code Ann. § 38(b) (1956). Betty's ⅙th interest in W. B.'s separate real estate was vested and passed to Holtzclaw by the provisions of her will.

■ With respect to the community real estate Irene, of course, would be entitled to her ½ and the children would divide W. B.'s ½. Tex.Prob.Code Ann. § 45 (1956). Thus, upon the death of W. B., Betty was entitled to ⅙th of ½, or ¹⁄₁₈th of the community real property and this interest passed to Holtzclaw by her will.

### The Royalty Interests

■ We have concluded that W. B. intended to dispose of *all* of the royalty interests in the proportions set out in his will for and during Irene's lifetime. While it is true that the will speaks of "royalty income", we cannot believe that W. B. intend-

ed his wife and children's interests to be limited merely to the income derived from invested royalties and we decline to so hold. Of the royalties which accrued during Irene's lifetime, however, she became the absolute owner of $\frac{2}{11}$ths thereof and each child became the absolute owner of $\frac{1}{11}$th of those royalties. Following the creation of these interests, however, we find no language which disposed of the royalty interest following the death of Irene. There being no gift over, upon Irene's death *W. B.'s interest* in the mineral estate reverted to his heirs. In Glenn v. Holt, 229 S.W. 684 (Tex. Civ.App.—El Paso 1921, no writ hist.) it was stated:

"Remainders are created by deed or devise, whereas reversions are created by operation of law. It matters not how many estates are carved out of the owner's entire estate, a reversion will be left, provided they do not amount in quantity to his original estate."

It is said in Thompson on Real Property (Perm.Ed.), Vol. 4, p. 716, § 2180, that a reversion is " * * * [t]he residue of an estate left by operation of law in the grantor or devisor or his successors, commencing in possession on the determination of a particular estate granted or devised. * * * A reversion is never created by deed, but it arises only by implication of law, and remains vested in the sense of a present fixed right of enjoyment in the future."

■ It can thus be seen that upon W. B.'s death Betty had a $\frac{1}{11}$th interest in the royalties which accrued during Irene's lifetime plus a vested $\frac{1}{8}$th interest in *W. B.'s share* of the reversion of that estate. This latter interest would amount to a full $\frac{1}{8}$th interest in that portion of the royalty estate appurtenant to W. B.'s separate property and $\frac{1}{8}$th of $\frac{1}{2}$ (or $\frac{1}{16}$th) of the royalty interest attributable to the community property. Her right to this latter interest was vested although possession and enjoyment of that estate would be postponed until Irene's death. Thus, this interest with which Betty died seized, along with any accumu-

lated royalties, passed by her will to her husband, Holtzclaw.

## The Income

■ We next construe that portion of W. B.'s will contained in paragraph 7 which reads:

"With reference to all other income except royalty income, it is my wish and desire that my beloved wife shall have full right to expend and dispose of same should she so desire."

Mindful of the presumption that a testator normally intends to dispose of his property only, we construe this language as being a bequest to Irene of only W. B.'s share of the income. Irene was given the full right of disposition of the income. A general power to dispose of personal property vests in the recipient of that power full ownership. 61 Tex.Jur.2d 376, Wills, § 242. This proposition is not, however, a rule of law, but is only an aid in the process of discovering the testator's intent. 96 C.J.S. Wills § 839b, p. 268. The rule will give way, for example, when a gift over follows the bequest—the implication in that instance being that there was an intention to create a life estate. Here, however, there was no gift over following the bequest of the income, and we therefore hold that by the language in paragraph 7 Irene was the absolute owner of all the income accruing during her lifetime. Upon Irene's death, any accumulated income and royalties, her separate real property, her $\frac{1}{2}$ of the community real property and all of the personal property (since W. B. had given her his personal property in paragraph 5 of his will) passed by the provisions of her will to the beneficiaries named therein who were alive when she died.

Holtzclaw received no interest under the will of Irene. Betty, through whom Holtzclaw claims his interests, predeceased Irene. Thereafter, Irene executed a codicil to her will (see footnote 1) which by its terms prevented Holtzclaw from receiving any rights or interests to the properties devised in her will.

In view of the holding we have heretofore made, it becomes necessary to dispose of the further points of error raised by the parties. As previously stated, Holtzclaw brought this suit to cancel the deed. As grounds for cancellation he alleged that no consideration was paid for the property purportedly conveyed by the deed; that he did not intend for the deed to operate as a gift of the property; that he lacked the mental capacity to execute the conveyance; that at the time of the execution of the instrument, he was laboring under undue influence. He further alleged the deed was void because the grantee and the property purportedly conveyed were insufficiently described; and, that one of the possible grantees, B. H. Haile, took the acknowledgement for the deed. Prior to the submission of the case to the jury, Holtzclaw filed a motion in which he requested the court to make affirmative findings that he did not intend the deed as a gift and that he received no consideration for the conveyance. The trial judge entered an order making the requested findings, to which ruling the Hailes duly excepted. Thereafter, the court submitted the case to the jury on two special issues. The first issue inquired whether Holtzclaw possessed the mental capacity to execute the deed. To this issue the jury found that Holtzclaw did not have the mental capacity to execute the deed. The second issue asked whether Holtzclaw was acting under undue influence at the time he executed the deed. The jury answered that he was not so acting. Based on the first jury finding, the trial court entered a judgment setting the deed aside.

In the Court of Civil Appeals the Hailes did not complain of the trial court's finding that no consideration was paid for the deed. On the other hand, Holtzclaw made no complaint of the failure of the jury to find undue influence. The Court of Civil Appeals found the evidence was factually insufficient to support the jury finding that Holtzclaw lacked the mental capacity to execute the deed. That court further held that there was enough evidence that Holtz-claw intended to make a gift of the property to the W. B. Haile Estate to warrant submission of an issue thereon; and, that the deed sufficiently described the grantee and the property sought to be conveyed. It was finally held that the fact that the acknowledgement to the deed was taken before one of the grantees did not render it invalid. Both the Hailes and Holtzclaw have points of error before this Court attacking the above holdings.

As part of the evidence relating to his mental capacity Holtzclaw introduced, over the objection of the Hailes, two orders dated February 13, 1958, and April 12, 1963, respectively, committing him to the Wichita Falls State Hospital pursuant to the Texas Mental Health Code, Article 5547–1 et seq. Vernon's Annotated Texas Civil Statutes. Also introduced into evidence was an order appointing a temporary guardian for Holtz-claw pursuant to Section 131, Texas Probate Code, dated May 15, 1963. The deed in question was dated May 30, 1963. According to Article 5547, Section 83(a), a judicial determination that a person is mentally incompetent creates a presumption that he continues to be incompetent until released from a mental hospital or until his competency is redetermined by a court. By Section 83(b) of that Article, on the other hand, a determination that a person is *mentally ill* without a finding of mental incompetence does not constitute a determination of his mental competency, abridge his rights as a citizen nor affect his property rights or legal capacity.

The Hailes objected to the introduction of the orders of commitment on the grounds that the orders adjudicated the fact that Holtzclaw was mentally ill as opposed to mentally incompetent and, that the orders were hearsay, irrelevant, immaterial and prejudicial. In short, their position is that an order adjudging a person to be mentally incompetent would be admissible to rebut the usual presumption that every person is sane, while an order adjudging a person to be mentally ill, since

it raises no presumption of mental incompetence, is inadmissible for any purpose. We cannot agree with this contention. The orders were introduced as some evidence of Holtzclaw's condition of mind at the time he executed the deed in question. We think the orders, both of which were entered prior to the execution of the deed, were relevant as bearing on Holtzclaw's mental condition at the time he executed the conveyance. See Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849 (1952); and, see McCormick & Ray, Texas Law of Evidence, (2d Ed.), Vol. 2, § 1282, p. 152. An adjudication which determines mental condition entered prior to the execution of a deed or will is generally held admissible upon the issue of the grantor's mental capacity. Annotations, 7 A.L.R. 568 (1920); 68 A.L.R. 1309 (1930); Slough, Testamentary Capacity: Evidentiary Aspects, 36 Texas L.Rev. 1 (1957); Green, Proof of Mental Incompetency and the Unexpressed Major Premise, 53 Yale L.J. 271 (1944); Green, The Operative Effect of Mental Incompetency on Agreements and Wills, 21 Texas L.Rev. 554 (1943). We therefore hold the orders admissible as bearing on Holtzclaw's mental capacity at the time he executed the deed. This holding is not in conflict with our holding in the case of Carr v. Radkey, 393 S.W.2d 806, (Tex.Sup. 1965). In that case the county court's judgment that the testatrix was non compos mentis was entered after the execution of the will, whereas, the orders in the present case were entered prior to the execution of the deed involved. Therefore, the *Carr* case is no authority for holding that the orders which were entered in the present case are inadmissible.

As above stated, the order appointing a temporary guardian for Holtzclaw was issued pursuant to Section 131, Texas Probate Code. That section authorizes a county judge to make an immediate appointment of a temporary guardian for a person of unsound mind in order to protect that person's interests. The order was entered fifteen days prior to the execution of the deed. We think it, along with the orders committing him to a mental hospital, if introduced upon another trial, would be admissible as bearing on the fact question of his mental capacity at the time of the execution of the deed.

■ Holtzclaw argues that as a matter of law the Court of Civil Appeals used the wrong test to determine the sufficiency of the evidence relating to his mental capacity to execute the deed in question. We are not in agreement with this contention. In the Court of Civil Appeals the Hailes had points of error asserting there was no evidence, or in the alternative insufficient evidence, to support the jury finding that Holtzclaw lacked the mental capacity to execute the conveyance. In disposing of the "no evidence" point the intermediate court held that the commitment orders and the order appointing a temporary guardian were admissible as bearing on Holtzclaw's mental condition at the time he executed the deed and therefore overruled this point. We have no quarrel with this holding. On the question of whether the evidence was factually sufficient[3] to support the jury finding of lack of mental capacity, the court held the orders were not in themselves sufficient to support that finding. In so ruling the court said, "Excluding *for the moment* the commitments and order appointing temporary guardianship, the evidence pertaining to appellee's mental condition at or near the time he executed the deed is, at best, meagre." [emphasis added]. The Court then viewed all the evidence pertinent to the issue of mental capacity. Thus, the Court did *not* exclude (as Holtzclaw argues here) the orders from its consideration; rather, it "excluded" those orders for the moment (since the Court had

3. For a discussion of the distinction between legal insufficiency, i. e., no evidence, and factual insufficiency, i. e., where the evidence supporting the finding is so weak that it must be set aside and a new trial ordered, see Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

already held that the orders standing alone were not sufficient to support the jury finding) and found that any other evidence relating to mental capacity was at best meager. On this basis the Court concluded the evidence was insufficient to support the jury finding of lack of mental capacity. We do not think the approach of the Court of Civil Appeals in reviewing the sufficiency of the evidence was erroneous as a matter of law and we accordingly overrule Holtzclaw's point of error challenging the test as being improper.

■ We turn now to Holtzclaw's contention that there was no evidence that the deed was intended as a gift of the property described therein. The Court of Civil Appeals held there was enough evidence of a gift to warrant the submission of that issue to a jury. We hold the trial court correctly declined to submit the issue of a gift to the jury, but for a different reason. In determining whether a gift was intended by the execution of a deed, we must look to the facts and circumstances surrounding its execution in addition to the recitation in the deed itself. Smith v. Allison, 157 Tex. 240, 301 S.W.2d 608 (1956) and Gibbs v. Barkley, 242 S.W. 462 (Tex.Com.App.1922). We hold that the conveyance was a gift as a matter of law. In reaching this conclusion we have taken into consideration the following facts and circumstances. There was testimony by Mrs. B. H. Haile that on the morning the deed was executed B. H. Haile had talked with Holtzclaw and told him that he did not think Betty would want him to will his property first to one person and then to another. Following this conversation, Holtzclaw stated, "Draw up the instrument". The deed was drawn up and Holtzclaw signed it. It is undisputed that no consideration was paid for the deed. B. H. Haile's wife further testified that immediately after signing the deed Holtzclaw said, "I am glad I signed that instrument because that it what Betty would want me to do." It should also be noted that Holtzclaw testified that he had no recollec-

tion of signing the deed. The only evidence offered by Holtzclaw that he did not intend to make a gift was his answer of "no" to a question, directed to him on direct examination and conditioned on his recollection, which inquired whether he intended to make a gift to the W. B. Estate. We do not think that Holtzclaw's answer on direct examination could defeat all of the other evidence which pointed to a gift as a matter of law. We therefore hold that the execution and delivery of the deed was a gift of the property described therein. We emphasize that this holding is based on the record we have before us and is confined solely to the issue of the intention of Holtzclaw to make a gift.

Holtzclaw next argues the deed was void on its face because the grantee of the deed was insufficiently described; the property was insufficiently described; and, the deed was acknowledged by a possible grantee, one of the Hailes.

■ The grantee named in the deed was "the W. B. Haile Estate". In McKee v. Ellis, 83 S.W. 880 (Tex.Civ.App.1904, no writ hist.) it was held that a deed "to the estate of L. A. Ellis, his heirs or assigns" had the effect of conveying the title to those entitled to take the grantee's estate. See also Lott v. Dashiell, 233 S.W. 1103, (Tex.Civ.App.—San Antonio 1921) mod'd on other grounds, 243 S.W. 1072 (Tex. Com.App.1922); Hill v. Jackson, 51 S.W. 357 (Tex.Civ.App.1899, writ ref'd). Since W. B. Haile was dead when the deed was executed, his "estate" or heirs were capable of being ascertained; therefore, under the above authorities we hold the grantee was sufficiently described.

■ As above stated, Holtzclaw attacked the deed as being void on its face because it was insufficient to describe the interests purportedly conveyed. The pertinent part of the deed reads as follows:

"* * * All interest in and to all of the oil, gas and other minerals in and under and that may be produced from the

following described lands situated in Hutchinson County, Texas, to-wit: being all of the interest in and to all of the oil, gas, and other minerals as inherited by Clyde H. Holtzclaw from Betty B. Holtzclaw and being all of the interest of Betty B. Holtzclaw in and to the oil, gas, minerals and real property of the W. B. Haile Estate as such interest is shown of record in the Probate Records of Hutchinson County, Texas, to which reference is made for a full description of the interest and title herein conveyed * * *."

We hold the description sufficient to describe the interests conveyed. Similar descriptions have been held sufficient to effect a valid conveyance. For example, see Pena v. Frost National Bank, 119 S.W. 2d 612 (Tex.Civ.App.—San Antonio 1938, writ ref'd); Smith v. Westall, 76 Tex. 509, 13 S.W. 540 (1890); Harris v. Broiles, 22 S.W. 421 (Tex.Civ.App.1893, no writ hist.); and see, Texas Consolidated Oils v. Bartels, 270 S.W.2d 708 (Tex.Civ.App.— Eastland 1954, writ ref'd).

■■■ Holtzclaw finally argues that the fact that the acknowledgement on the deed was taken before B. H. Haile, one of the possible grantees, "taken with the other facts and grounds for questioning the deed" rendered the deed void. We do not agree with this contention inasmuch as between a grantor and a grantee deeds are valid even without a valid acknowledgement. Hill v. McIntyre Drilling Co., 59 S.W.2d 193 (Tex.Civ.App.—Texarkana 1933, writ ref'd); First State Bank in Caldwell v. Stubbs, 48 S.W.2d 446 (Tex. Civ.App.—Galveston 1932, no writ hist.)

Mondragon v. Mondragon, 239 S.W. 650 (Tex.Civ.App.—San Antonio 1922) mod'd on other grounds, 113 Tex. 404, 257 S.W. 215 (1923).

■■■ Since this cause is to be remanded to the trial court for a new trial, we deem it necessary to discuss one other question which might arise upon another trial. The Hailes contend that Holtzclaw owned no interest in the property involved and that therefore they were entitled to $36,253.33 which they assert was paid to Holtzclaw under a mistake of law. Since we have determined that Holtzclaw owns some interest in W. B. Haile's property, this question, if raised upon a new trial, is to be determined in the light of this holding.

Our rulings on the questions presented on this appeal render it necessary to remand this cause to the trial court for a new trial. The pleadings and the evidence may present entirely different issues than those considered herein. Also, additional evidence may be developed upon a new trial. Therefore, our discussion of the facts and issues presented on the present record is not to be interpreted as conclusive of the record to be made upon a new trial.

The judgments of the trial court and the Court of Civil Appeals are reversed. The interests of the respective parties in the various properties are declared to be as herein set out, and the cause is remanded to the trial court for a new trial of the remaining issues in the case in accordance with this opinion.

All costs are taxed against the Hailes and Holtzclaw equally.