Affirmed and Memorandum Opinion filed July 23, 2009








Affirmed and Memorandum
Opinion filed July 23, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00589-CV

____________

 

LARRY KALINA, DIANE KALINA, AND
CLINT KALINA,
Appellants

 

V.

 

CODY WILLS BURNS, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE ESTATE OF KAREN DEAN BURNS, DECEASED, Appellee

 



 

On Appeal from the 12th
District Court

Madison County, Texas

Trial Court Cause No. 06-11234-012-10

 



 

M E M O R A N D U M   O P I N I O N








Pursuant to section 73.001 of the Texas Government Code,
the Texas Supreme Court has transferred this cause from the Tenth Court of
Appeals to the Fourteenth Court of Appeals.  Tex. Gov=t Code Ann. ' 73.001.  In this
cause, appellants, Larry Kalina, Diane Kalina, and Clint Kalina, appeal from a
judgment in which the trial court decreed, based on a jury finding, that at the
time decedent Karen Dean Burns conveyed certain real property to Larry Kalina, she
lacked the requisite mental capacity to make such conveyances.  Based on that
finding, the court further decreed that the conveyance deeds were void and that
all interest in the property remained with the estate of Karen Burns, as
represented by the administrator of the estate, appellee Cody Wills Burns.  In
three issues, appellants challenge the legal sufficiency of the evidence to
support the jury=s finding regarding mental capacity and
contend that the trial court erred in refusing to include two additional
instructions in the jury charge.  We affirm.

Background

On November 2, 2005, Karen Burns signed a warranty deed
conveying certain real property she had inherited to Larry Kalina.[1] 
On January 16, 2006, Karen signed another deed conveying additional real
property to Kalina.  In exchange for the conveyances, Karen was designated
beneficiary of a $150,000 annuity, under which she was to receive $1,000 a
month for twenty years.  Also pursuant to her agreement with Kalina, Karen was
permitted to remain on the property for the rest of her life.  Karen died of an
apparent suicide on November 4, 2006.  Cody Burns, in his individual capacity
as Karen=s son and heir and
in his capacity as administrator of her estate, filed suit seeking to set aside
the deeds conveying the two tracts of property from Karen to Kalina.[2]








At trial, the primary issues were whether Karen executed
the deeds as a result of undue influence from Kalina, and whether Karen lacked
the requisite mental capacity at the time she executed the deeds.  As will be
discussed in greater detail below, regarding capacity, appellee produced
evidence that around the time the deeds were executed, Karen suffered from
alcoholism and mental illness.  He further produced evidence that Karen
appeared to be intoxicated at the time she signed one of the deeds and that
Karen did not realize, after signing the deeds, that she had conveyed her
property.  Meanwhile, appellants produced evidence that the notary public who
notarized Karen=s signatures on the two deeds would not
have done so had Karen exhibited any signs of incapacity.

In the jury charge, the trial court asked the jury (1)
whether Karen Alack[ed] mental capacity at the time she executed the
deeds,@ and (2) whether
Karen Aexecute[d] the
deeds . . . as a result of the undue influence of [Kalina].@  The court
rejected several possible additions to the charge proposed by appellants.  The
jury found that Karen indeed lacked capacity at the time she executed the deeds
but she did not do so as a result of Kalina=s undue
influence.  Based on this verdict, the trial court decreed that the conveyance
deeds were void and that all interest in the property remained with Karen Burns= estate.  The
trial court additionally awarded appellee, in his individual capacity and as
administrator of Karen Burns= estate, his court costs, and awarded him,
in his capacity as administrator, all necessary writs and processes for enforcement
of the judgment.  The court further ordered the consideration Kalina paid for
the property returned to him.

Legal Sufficiency








In their first issue, appellants contend that the evidence
is legally insufficient to support the jury=s finding that
Karen lacked the requisite mental capacity at the time she executed the deeds. 
We must sustain a legal sufficiency challenge if the record demonstrates that: 
(1) there is a complete absence of evidence on a vital fact; (2) rules of law
or evidence prevent the court from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a scintilla; or (4) the evidence establishes conclusively the opposite
of the vital fact.  City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex.
2005).  We consider the evidence in the light most favorable to the verdict and
indulge every reasonable inference that supports it.  Id. at 822.  The
evidence is legally sufficient if it would enable reasonable and fair‑minded
people to reach the verdict under review.  Id. at 827.  We credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.  See id.

The jury charge defined Amental capacity@ in regards to
Karen=s actions as Asufficient mind
and memory to understand the nature and effect of the act in which she was
engaged and the business which she was transacting.@  The law
generally presumes that a person possesses the requisite mental capacity at the
time of executing a conveyance deed; thus, a party contesting such capacity
must shoulder the burden of proof.  Decker v. Decker, 192 S.W.3d 648,
652 (Tex. App.CFort Worth 2006, no pet.). Evidence concerning
capacity either prior to or subsequent to the time of the conveyance may be
relevant to the capacity issue.  Id. (citing Haile v. Holtzclaw,
414 S.W.2d 916, 926 (Tex. 1967), et. al).  Circumstantial evidence may
be relevant to proving capacity or the lack thereof, including:  (1) the
conduct of the party in question, (2) circumstances tending to produce a
particular mental condition, and (3) prior or subsequent existence of a mental
condition from which a party=s capacity or incapacity at the time in
question may be inferred.  In re Estate of Robinson, 140 S.W.3d 782, 793
(Tex. App.CCorpus Christi 2004, pet. denied).  The question of
capacity is generally one for the jury.  See id. at 793-94.








As mentioned above, there was considerable evidence
regarding Karen=s alcoholism and mental illness around the
time she conveyed her two tracts of property to Kalina.  Several people
testified that they regularly saw Karen intoxicated.  Mike Ferris testified
that he had known Karen for a long time and that there came a point when he Anever saw her
sober@ even though he
saw her almost daily.  When asked on cross examination, however, Ferris could
not recall whether he had seen Karen on the days she executed the deeds. 
Charles Baker similarly described seeing Karen on a regular basis and stated
that A[e]very time [he]
saw her she was intoxicated.@  He also could not say whether he saw her
on the dates she executed the deeds.  Bruce Gaylor testified that he saw Karen
on a fairly regular basis, and there was only one such time that he could
remember on which she was not definitely intoxicated.  Gaylor was not asked
whether he saw Karen on the days that she executed the deeds.

Karen=s longtime physician, Dr. Charles White,
testified in detail about her mental condition during the time period in which
she executed the deeds.  He explained that she suffered from bipolar disorder,
anxiety, and panic attacks.  He further verified her Achronic alcoholism@ and stated that
she sometimes Aheard voices telling her to do things.@  At one point,
according to White, Karen was hospitalized for self-mutilation after she
scrubbed one of her breasts with sandpaper because voices had told her to do
so.  White said that he prescribed medications for Karen=s conditions, but
she refused to take them consistently.  White acknowledged that Karen=s judgment may
have been coherent at times and that Athere [were] times
when she could perform as good as anybody.@

Lanier Stevens testified that he is a preacher who knew
Karen and her family.  He confirmed Karen=s drinking problem
and said that at times Ashe would talk . . . almost out of her
head. . . . [S]he had visions and dreams of things that she would see . . . .@  He described her
behavior as Aerratic@ and Airrational@ and said that she
would sometimes fall into a Amelancholy hopelessness.@

Regarding the particular days on which Karen signed the
deeds, Laura Nash, who worked at the front desk at the title company where at
least one of the deeds was signed, testified that she specifically remembered
Karen coming in to sign one of the deeds because the sales price was Avery, very, very
low@ for the amount of
property.  Nash further stated that Karen on that day was Akind of stumbly
and giggly and . . . she seemed to be intoxicated.@








Additionally, Gaylor testified that Karen came to his
office at one point and started crying.  She said AI think I made the
mistake [sic] and lost my place. . . .  Larry Kalina had me sign a bunch of
papers.  I don=t know what all I signed.@  According to
Gaylor, Karen further told him that she thought Kalina was lending her money
and only wanted the papers as security on the loan; she said AThat is my home. 
I would never sell it . . . .@  Ferris further testified that when he
asked Karen whether she had sold the property, after hearing that she had, she
replied Ano.@

The foregoing evidence tends to show that Karen suffered
from persistent mental incapacity (through intoxication and mental illness)
around the time that she executed the deeds.  There was also direct evidence of
incapacity on the very day that she signed at least one of the deeds, and there
was evidence that Karen did not understand what she had done until sometime
after executing the deeds.  This evidence supports the jury=s finding that she
lacked the requisite mental capacity at the time of signing.  See Decker,
192 S.W.3d at 652; In re Estate of Robinson, 140 S.W.3d at 793.

In contrast, appellants emphasize testimony by Starre
McKay, the notary public who notarized Karen=s signatures on
both conveyance deeds, wherein she stated that although she didn=t specifically
remember Karen, she [McKay] would not have notarized the signatures if Karen
had Aexhibited signs of
being drunk or incapacitated.@  Appellants further assert that Athere was no
evidence to contradict the direct testimony of Starre McKay.@  However, whether
there was contradictory evidence or not, the jury, as sole judge of the
credibility of witnesses and the weight to be given their testimony, was free
to discount, or disregard altogether, McKay=s testimony.  See
City of Keller, 168 S.W.3d at 819-20 (ACourts reviewing
all the evidence in a light favorable to the verdict [must] assume that jurors
credited testimony favorable to the verdict and disbelieved testimony contrary
to it. . . .  Jurors may disregard even uncontradicted and unimpeached
testimony from disinterested witnesses.@).[3] 
Based on the foregoing analysis, we find that the evidence is legally
sufficient to support the verdict.  Accordingly, we overrule appellants= first issue.








Jury Instructions

In their second and third issues, appellants contend that
the trial court erred in refusing to include in the jury charge two additional
instructions relating to mental capacity.  We review a trial court=s rejection of a
proposed charge instruction under an abuse‑of‑discretion standard. 
Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006).  Within that
discretion, the trial court should submit instructions which are raised by the
pleadings and evidence and reasonably necessary to enable the jury to render a
verdict.  See Tex. R. Civ. P. 277, 278; Shupe, 192 S.W.3d at 579.

In their second issue, appellants contend that the trial
court should have submitted the following proposed instruction:  AUnsoundness of
mind at another time prior to or after the making of a deed may or may not
indicate lack of mental capacity at the time of making the deed.@  Appellants do
not cite any authority requiring such an instruction in cases where a grantor=s mental capacity
is at issue.[4] 
Although the instruction may be a logical and correct statement, it does not
appear particularly helpful to a jury, much less necessary for the jury to
render a proper verdict.  See generally Decker, 192 S.W.3d at 652
(holding that evidence relating to capacity prior to or subsequent to the time
of a conveyance may be relevant to determining the capacity of the grantor at
the time of the conveyance).  Indeed, the instruction appears to do no more
than present a matter of common sense on which it was not necessary to instruct
the jury.  We further note that the jury charge properly and specifically asked
whether Karen Alack[ed] capacity at the time she executed the deeds,@ thus confining
the jury=s consideration to
the relevant time periods without necessity of an additional instruction. 
Consequently, the trial court did not abuse its discretion in rejecting this
proposed instruction.  We overrule appellants= second issue.








In their third issue, appellants contend that the trial
court should have submitted the following additional instruction: AThe law presumes
that the grantor of the deed had sufficient mental capacity at the time of
execution of the deed to understand his or her legal rights.@  Again,
appellants do not cite any authority requiring such an instruction in mental
capacity cases.  The
language in question apparently came from Decker, which appellants cited
in their proposed instructions.  192 S.W.3d at 652.  The Decker court,
however, makes the quoted statement only in explaining that the burden of proof
is on the party seeking to show a grantor=s absence of
mental capacity as a method of setting aside a deed.  Id.  The court
does not suggest that this particular language should be included in a mental
capacity jury submission.  Here, the charge as submitted already properly
placed the burden of proof regarding mental capacity on appellee.[5] 
Appellants offer no explanation as to why their proposed instruction was
required in addition to the proper burden-of-proof instruction already
contained in the charge.  Accordingly, we find that the trial court did not
abuse its discretion in rejecting appellants= proposed charge
instruction.  We overrule appellants= third issue.

We affirm the trial court=s judgment.               

 

/s/      Adele Hedges

Chief Justice

 

Panel consists of
Chief Justice Hedges and Justices Yates and Frost.









[1]  Although three members of the Kalina family; Larry,
Diana and Clint; are listed on the briefs and in the trial court pleadings,
only Larry Kalina is mentioned in the deeds, the jury charge, and the trial
court=s judgment.  Accordingly, we will use the name AKalina@ to refer only
to Larry Kalina in the remainder of this opinion.





[2]  One additional plaintiff and several additional
defendants were involved at times in the proceedings below.  None of these
parties remained in the lawsuit at the time of trial; thus, they are neither
party to, nor subject of, the present appeal.





[3]  McKay acknowledged that she did not specifically
remember Karen and that she would have been with Karen for no more than five
minutes.





[4]  The proposed instruction is nearly verbatim language
from Smith v. Smith, 607 S.W.2d 617, 620 (Tex. Civ. App.CWaco 1980, no writ).  However, the discussion in Smith
is simply a generalized discussion of what types of evidence might demonstrate
mental incapacity; nothing in Smith suggests that the quoted language
constitutes a necessary jury instruction.  Id.





[5]  The trial court instructed the jury that:

 

A AYes@ answer must be based upon a preponderance of the
evidence.  If you do not find that a preponderance of the evidence supports a AYes@ answer, then
answer ANo.@  The term Apreponderance of the evidence@ means the greater weight and degree of credible
evidence admitted in this case.

 

The court further structured the mental capacity
question such that a Ayes@ answer by the
jury meant that it found that Karen lacked mental capacity at the time she
executed the deeds.  In this fashion, the burden of proof was placed on Burns.