

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00472-CV

_____

MARTHA ELENA GALINDO, Appellant

V.

BALDEMAR GALINDO, Appellee

On Appeal from County Court at Law No. 2
Wise County, Texas
Trial Court No. CV20-07-552

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant, Martha Elena Galindo, appeals the final decree of divorce entered in this divorce proceeding she filed against her now-former husband, Appellee Baldemar Galindo. The major contested issue in the trial court—and the focus of Martha's appeal—concerns the character of 15.00 acres of a larger 33.99-acre tract of land Baldemar had acquired prior to marriage as well as the house (the marital residence) that was built on and financed by a security interest in the smaller tract during the marriage. The trial court found that the marital residence and all 33.99 acres of the larger tract, including the 15.00 acres on which the marital residence was built, were Baldemar's separate property. Because we determine that the trial court did not abuse its discretion in characterizing this property as Baldemar's separate property, we affirm the trial court's finding and the final decree of divorce.

## I. Background

In 1995, Baldemar purchased a 33.99-acre tract of land in Wise County, Texas. In 1996, he married Martha. During the marriage, Baldemar and Martha lived on the land, and in 2003, they borrowed $170,000 and built the marital residence on the land. Both Baldemar and Martha signed a deed of trust and a mechanic's lien contract granting the contractor a lien on the property. Both the deed of trust and the mechanic's lien contract identified the property being conveyed as "15.00 acres in . . . Wise County, Texas, . . . being part of a called 33.99 acre tract," the same 33.99-acre

tract of land Baldemar had purchased prior to marrying Martha. The lien was released in 2004.

Martha filed for divorce in 2020. She was still living in the marital residence with Baldemar at the time of trial in August 2022. She testified that they did not have any debt. The mechanic's lien contract and deed of trust were admitted in evidence, as was the contract for Baldemar's 1995 purchase of the 33.99 acres. Baldemar also offered, and the trial court admitted, business records from the Wise County Appraisal District (WCAD), showing him as the sole owner of 100% of the 33.99-acre tract of property.[1]

Both Martha and Baldemar testified that the mortgage on the house had been paid off during their marriage with community funds. They also both testified that part of the loan that Baldemar had taken out to purchase the land prior to marriage had been repaid during their marriage with community assets. And they both testified that Baldemar had purchased the entire 33.99 acres prior to their marriage and that he never deeded the property—or any interest in any part of the property—to Martha.

Martha testified that the mechanic's lien contract they had signed in 2003 separated the 15.00 acres (on which the marital residence was built) from the rest of the 33.99 acres. She testified that the remaining 18.99 acres would be Baldemar's separate property, but she asked the trial court to divide the other 15.00 acres,

---

[1]The address of the property in the WCAD records matched the address of the marital residence.

including the marital residence, "equally" and to appoint a receiver to sell the property if an agreement could not be reached for the sale of the property.[2] She took the position that that property was community property. Baldemar maintained that the entire 33.99 acres, including the marital residence, was his separate property; that signing a deed of trust or a mechanic's lien contract did not change the character of the property; and "that the community has a reimbursement claim for the enhanced value of the house that was built on the separate property."

The trial court confirmed that the marital residence and all 33.99 acres of the larger tract, including the 15.00 acres on which the marital residence was built, were Baldemar's separate property and ordered Martha to vacate the property by September 6, 2022, without causing any damage or destruction. The trial court further ruled "that there is a reimbursement claim by each party for money spent on the separate property of the other party."[3] In an email sent to the parties' attorneys a week after the trial, the judge identified the amounts of the apparent reimbursement claims based on the evidence but then stated, "Given the other testimony presented about

---

[2]Martha testified, "If he wants to buy part of it, he can buy me out."

[3]The parties did not dispute that Martha owned another home, purchased by her before the marriage, as her separate property. Baldemar sought reimbursement for community funds Martha had expended during their marriage on her separate property.

money spent and cattle sold, I am not going to order either party to pay anything in reimbursement."[4]

Martha requested findings of fact and conclusions of law and filed a motion for new trial (which she later amended). The trial court made findings of fact and conclusions of law and denied Martha's motion for new trial. Martha then filed a notice of appeal.

## II. Property-Characterization Claims

Martha raises three appellate issues, but all complain of the same thing: the trial court's order confirming the marital residence and the 15.00 acres on which it sits as Baldemar's separate property. Martha argues that (1) the trial court made an error of law in confirming the marital residence as Baldemar's separate property, (2) the trial court abused its discretion in confirming the marital residence as Baldemar's separate property, and (3) there is insufficient evidence to support the trial court's judgment.[5]

### A. General family-law standard of review

We review a trial court's alleged characterization error for an abuse of discretion. *See Boyd v. Boyd*, 131 S.W.3d 605, 617 (Tex. App.—Fort Worth 2004, no pet.). In family-law cases, the traditional sufficiency standards of review overlap with

---

[4]In addition to his state-government job, Baldemar was in the business of selling cattle.

[5]Martha enumerates these contentions as three separate issues in the issues-presented and summary-of-the-argument sections of her brief but then proceeds to argue them as one issue. As we will discuss in our ensuing analysis, this is effectively one issue with multiple levels of review.

the abuse-of-discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Rice v. Rice*, No. 02-21-00413-CV, 2023 WL 109817, at *8 (Tex. App.—Fort Worth Jan. 5, 2023, no pet.) (mem. op.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether the trial court erred in its application of that discretion. *Id.*

In determining the first question, we apply the same standards of review to a trial court's findings of fact that we apply to a jury's answers to questions in the court's charge. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the burden of proof at trial is by clear and convincing evidence,[6] we apply a higher standard of legal and factual sufficiency review. *Boyd*, 131 S.W.3d at 611. Evidence is legally insufficient to support a finding only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining legal

---

[6]"Clear and convincing evidence" is defined as that "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Boyd*, 131 S.W.3d at 611.

sufficiency, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Boyd*, 131 S.W.3d at 611. When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**B. Applicable property-division law**

In Texas, property owned before marriage—or acquired during marriage by gift, devise, or descent—is separate property and remains the spouse's separate property during and after the marriage. Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001. A trial court has no discretion to divest a party of his or her separate property via a divorce decree. *Alcedo v. Alcedo*, No. 02-17-00451-CV, 2019 WL 2292979, at *3 (Tex. App.—Fort Worth May 30, 2019, pet. denied) (mem. op.).

But as a starting point for a division, "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." Tex. Fam. Code Ann. § 3.003(a). Therefore, a party claiming certain property as separate has the burden to rebut the community property presumption. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "The degree of proof necessary to establish that property is separate property is clear and convincing evidence." Tex. Fam. Code Ann. § 3.003(b). The uncorroborated testimony of one spouse can be sufficient to meet the spouse's "clear and convincing" burden that property is his separate property. *See Newland v. Newland*, 529 S.W.2d 105, 107–08 (Tex. App.—Fort Worth 1975, writ dism'd).

We determine whether property is separate or community by its character at the time of inception. *Boyd*, 131 S.W.3d at 612; *see Jensen v. Jensen*, 665 S.W.2d 107, 109 (Tex. 1984) (op. on reh'g). "Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested." *Boyd*, 131 S.W.3d at

8

612. When evidence establishes that the origin of a spouse's title to property preceded the marriage, making the property that spouse's separate property, the community property presumption "no longer prevails." *Welder v. Lambert*, 44 S.W. 281, 287 (Tex. 1898). If one spouse improves his or her separate property with community funds, then the other spouse would be entitled to reimbursement to the community estate out of the separate estate of the spouse whose separate property was improved. *Dakan v. Dakan*, 83 S.W.2d 620, 627 (Tex. 1935). The equitable claim for reimbursement, however, "is not a right, title, or interest in the land as such"; the use of community funds to improve one spouse's separate property does not change the character of the improved property into community property. *Id.* at 628.

In a case with facts similar to those in the case at bar, our sister court in El Paso explained the applicable law on this point:

> The uncontroverted evidence at trial demonstrated that Husband purchased the 60-acre parcel . . . prior to the marriage with his separate property funds. Accordingly, under the inception of title doctrine, any interest that Husband had remaining on that parcel . . . was his separate property. Additionally, contrary to Wife's position at trial, none of the events that occurred during the marriage transformed the property into a community asset. First, although the undisputed evidence established that improvements were made to the . . . property during the course of the marriage, it is well-established that any improvements made to a spouse's separate property during marriage, including the construction of a residence or other buildings thereon, are considered the spouse's separate property, and the community receives no "right, title or interest in or to the land." *See Burton v. Bell*, 380 S.W.2d 561, 565 (Tex. 1964); *see also Kite v. Kite*, No. 01-08-00643-CV, 2010 WL 1053014, at *2-4 (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, no pet.) (mem. op.) (marital residence that was built on husband's separate property was his separate property), *citing Leighton v. Leighton*, 921 S.W.2d 365, 367 (Tex. App.—

9

Houston [1st Dist.] 1996, no writ) [(op. on reh'g)] (any improvements made on separate property, including residence, even if made with community funds, are considered separate property of land owner); *see also Perez v. Perez*, No. 13-96-049-CV, 1997 WL 1507337, at *2 (Tex. App.—Corpus Christi[–Edinburg] June 26, 1997, no writ) (house that was built on a spouse's separate property during course of marriage was properly characterized as the spouse's separate property). As the Texas Supreme Court has explained, this is so because the "improvements become attached to the soil, and cannot, in the nature of things, be divisible in specie when one of the joint owners has no interest in the land upon which they have been erected." *Burton*, 380 S.W.2d at 561.

. . . In addition, the fact that the parties may have used community funds to reduce the principal amount of Husband's loans on the . . . properties during the marriage did not transform the property into community property. *See Attaguile v. Attaguile*, 584 S.W.3d 163, 176 (Tex. App.—El Paso 2018, no pet.) (recognizing that payments from one estate to reduce a loan on another estate's property does not transform the nature of the property, and instead only creates a potential claim for reimbursement).

*Blair v. Blair*, 642 S.W.3d 150, 156–57 (Tex. App.—El Paso 2021, no pet.).

## C. Application to facts

Martha admits that "it is not disputed that [Baldemar] purchased the land (33.96 [sic] acres) through the Texas Veterans Land Board prior to marriage and that it was his separate property at the time of the marriage." She acknowledges the inception-of-title rule but points out that the characterization of property as separate property "can be changed through gift or devi[s]e during marriage." She contends that Baldemar "changed the color" of title when he (1) "signed two separate and distinct deeds with both parties listed as 'Grantor' that contain a new legal description and new metes and bounds" and (2) "failed to take any steps after the signing of either

10

deed to ensure these actions did not change the characterization of the property."

Martha claims that the mechanic's lien contract and deed of trust dated September 25, 2003, and February 27, 2004, respectively, evidenced a gift from Baldemar to her of a one-half interest in the "new" 15.00-acre tract of land described by new metes and bounds and signed by both parties, who then jointly had a home constructed on the 15.00-acre tract.

We reject Martha's "gift" argument for two reasons. First, the only method of concurrently giving an estate in land and perfecting the gift is by a deed conveying the property to the donee. *McKee v. Douglas*, 362 S.W.2d 870, 876 (Tex. App.—Texarkana 1962, writ ref'd n.r.e.). In other words, the only way for Baldemar to have made a gift to Martha of an interest in his separate property would have been by the execution of a deed. *See id.*[7] But both Martha and Baldemar testified that he never executed a deed

---

[7]The *McKee* case illustrates why the mechanic's lien contract, on which both Baldemar and Martha are identified as "Owner," and the deed of trust, on which they are both identified as "Grantor," does not evince a gift or any conveyance of property from Baldemar to Martha. Although *McKee* was not a divorce case, it did involve a warranty deed signed by a husband and wife. *See* 362 S.W.2d at 872. The deed identified both the husband and wife as "grantors" even though the realty being conveyed was the husband's separate property. *Id.* at 871, 874. After the husband died, his wife and other heirs sued the grantees of the property conveyed in the deed; the suit concerned a royalty interest in the property. *Id.* at 872–75. The court of appeals said that the wife's joinder in the conveyance of her husband's separate property to the grantees "was unnecessary." *Id.* at 876. Because the husband never executed a deed conveying an interest in his separate property to the wife, "she never acquired any interest in the royalty in question by gift or in any other manner," and the trial court correctly instructed a verdict in favor of the grantees against the husband's heirs. *Id.* By this reasoning, the trial court in the instant case could have

11

to her. Martha testified that the only document on which she was relying in support of her community property argument was a mechanic's lien contract that Baldemar and she entered into to build a house on the 15.00 acres. There was no evidence to the contrary. We therefore cannot say that the trial court erred to confirm the entire 33.99-acre tract, including the marital residence, as Baldemar's separate property; the community property presumption fell with the admission of uncontroverted evidence that Baldemar owned the 33.99 acres before the marriage, and the trial court had before it testimony from both parties that Baldemar never deeded property or any interest in any part of the property to Martha.

Relying on *Haile v. Holtzclaw*, 414 S.W.2d 916 (Tex. 1964), and *Woodworth v. Cortez*, 660 S.W.2d 561 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.), Martha argues that the evidence "clearly shows" that Baldemar "intentionally separated his separate property into two parcels and by way of two s[e]perate deeds gifted one half interest in the 15.00-acre tract" to her.[8] She cites *Haile* for the proposition that a trial

---

found that Martha's joinder in the mechanic's lien contract and the deed of trust was unnecessary, in light of the testimony that Baldemar never executed a deed to Martha.

[8]In her brief, Martha refers to both the mechanic's lien contract and the deed of trust as "deeds." But in Texas, the law has long treated deeds of trust as mortgages. *See, e.g.*, *Successors to the Interest of Rea-Glass, Inc. v. Allied Corp.*, 704 S.W.2d 387, 389 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("Generally, a deed of trust is a mortgage with a power to sell on default."). As Martha acknowledged to the trial court, the deed of trust admitted in evidence states on its face that it is a "mortgage." And in Texas, when a deed is declared to be a mortgage, though the deed may be "absolute on its face[,] it is not a grant of title but is instead from its inception a mere lien." *Humble Oil & Refin. Co. v. Atwood*, 244 S.W.2d 637, 641 (Tex. 1951). Similarly,

12

court can properly find a gift was made "based on circumstances surrounding the gift," despite testimony that there was no donative intent. Both *Haile* and *Woodworth* support that general proposition but not the specific appellate contentions Martha makes here. Those cases involved deeds in which the donees were named as grantees. *Haile*, 414 S.W.2d at 921–22; *Woodworth*, 660 S.W.2d at 564. The issue in each case was "whether a gift was intended by the execution of a deed." *Haile*, 414 S.W.2d at 927; *Woodworth*, 660 S.W.2d at 564. As we have discussed, the undisputed evidence in this case established that there was no deed conveying property to Martha as grantee. *Haile* and *Woodworth* are therefore distinguishable.

And *Woodworth* stands for the proposition that the burden of proving a gift *inter vivos* is upon the party claiming that the gift was made. 660 S.W.2d at 564. This brings us to the other problem with Martha's argument. Martha claims that Baldemar's signature and initials on the deed of trust, the mechanic's lien contract, and two additional documents attached thereto describing the 15.00-acre tract "create a presumption that [Baldemar] gifted a one-half interest in the new parcel and failed to

---

the mechanic's lien contract states that it creates a lien to secure a debt. Thus, neither document was a "deed" conveying property but merely a contract executed by the Galindos to secure payment of their debt. *See Leighton*, 921 S.W.2d at 368 (stating that a deed of trust creates a lien on property but does not transfer title); *Norriss v. Patterson*, 261 S.W.2d 758, 761 (Tex. App.—Fort Worth 1953, writ ref'd n.r.e.) ("A mortgage does not pass title, but as to real estate is an executed contract pledging the title as a security for performance of an obligation by a legal or equitable owner."); *Lusher v. First Nat'l Bank of Fort Worth*, 260 S.W.2d 621, 627 (Tex. App.—Fort Worth 1953, writ ref'd n.r.e.) (same). However, based on the rationale of *McKee*, even a bona fide deed naming both Baldemar and Martha as grantors and purporting to convey title to the property would not have conclusively established a gift from Baldemar to Martha.

provide clear and convincing evidence to overcome the community property presumption." That is not how the presumption of gift arises in marital property cases. When a husband uses separate property consideration to pay for land *acquired during the marriage* and *takes title to the land in the name of husband and wife*, it is presumed he intended the interest placed in his wife to be a gift. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975); *see also J.M. v. C.M.*, No. 02-19-00277-CV, 2021 WL 832655, at \*2 n.9 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.) ("A presumption of gift arises when a spouse uses separate property consideration to pay for land acquired during the marriage and takes title to the land in the name of both spouses."). That is not what happened here.

But even if Martha were correct about the presumption of gift from one spouse to another, we still would not sustain her appellate issue because her argument fails to take into account (1) that this presumption can be rebutted by evidence clearly establishing there was no intention to make a gift and (2) the deference a reviewing court must afford a trial court's finding of fact. *See Cockerham*, 527 S.W.2d at 168. Like the trial court in *Cockerham*, the trial court in the present case must have impliedly found that there was no intention on the part of the husband to make a gift to his wife. *See id.* "This finding must be upheld if it finds any support in the evidence." *Id.* Here, the evidence in the record shows that Baldemar owned a 33.99-acre tract of land as his separate property before marrying Martha, that Baldemar and Martha had a house built on that land during their marriage, that he never executed a deed to her,

14

and that the local taxing authority recognized Baldemar as the only owner of the property as of 2022. Thus, like the supreme court in *Cockerham*, "we are unable to say there is no evidence to uphold the implied finding of the trial court that [the husband] did not intend to make a gift to his wife." *See id.*

A trial court does not abuse its discretion so long as there is some substantive, probative evidence to support the decision. *Emami v. Emami*, No. 02-21-00319-CV, 2022 WL 3273603, at *2 (Tex. App.—Fort Worth Aug. 11, 2022, no pet.) (mem. op.). The record before us contains plenty such evidence. We overrule all of Martha's appellate issues.

## III. Conclusion

Having overruled all of Martha's issues on appeal, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 20, 2023

15